[Crim. No. 1812. Third Dist. Dec. 7, 1942.]

THE PEOPLE, Respondent, v. HAROLD McGINNIS, Appellant.

932

Chas. Kasch for Appellant.

Earl Warren, Attorney General, and J. Q. Brown, Deputy Attorney General, for Respondent.

THE COURT.—The defendant has appealed from a judgment of conviction of a criminal charge of forcibly or fraudulently taking and enticing away from their mother

three children, contrary to the provisions of section 278 of the Penal Code.

The defendant and Edith McGinnis were husband and wife. The children in question are the issue of that marriage. October 24, 1940, Mrs. McGinnis was granted a final decree of divorce from the defendant in Contra Costa County. She was awarded the custody of the children, subject to his right to temporary possession of the children from 3 p. m. on the first Thursday of each month to 6 p. m. the following Sunday. The defendant thereafter moved to Las Vegas, New Mexico, where he was operating an auto court. In June, 1941, Mrs. McGinnis was employed at the St. Helena Sanitarium in Napa County, where she was residing with the three children. June 19, 1941, the defendant returned to California and obtained a letter from Judge Bray, who tried the divorce suit, addressed to Chief of Police Johnson at Calistoga, telling him of the serious trouble between the former spouses, their subsequent divorce and the awarding of the custody of the children to Mrs. McGinnis. The judge then told Mr. Johnson that in spite of their antagonism, "he is entitled to see his children provided he creates no trouble. I am satisfied if you or one of your men will go with him there should be no trouble, and therefore I am informing him that he has the right to see his children provided you or one of your officers is with him."

The defendant claimed that the officers were too busy to accompany him to the sanitarium for the purpose of seeing his children. He therefore drove alone in his automobile to the sanitarium and demanded a right to visit with the children on the last-mentioned date. It will be observed June 19th was not the first Thursday of the month, and he was therefore not entitled to take the children with him on that occasion according to the express terms of the decree of divorce. The letter from the judge merely authorized him to visit with them in the presence of the officer. The defendant parked his car and went to the cottage occupied by his wife and the children, demanding the right to take the children with him. His wife refused to permit him to take them from her presence. He attempted to seize them. She screamed and three men occupying an adjacent cottage came to her assistance. A quarrel ensued. The defendant struck at one of the men. Finally he presented to them his letter. The judge was called on the telephone and advised them to permit the defendant to visit with the children in their presence. It was then agreed

the defendant might take the children to the "Social Center," near the sanitarium building, for an agreed brief period of time. It was understood they would walk back and forth to that recreation place and that they would not leave the premises. The defendant promised to return them promptly when the agreed period elapsed. In violation of his promise, the defendant put the children in his automobile and hastily drove away. Some of the men followed him. He did not even stop at the social center, but left the state and drove all night, reaching Austin, Nevada, early on the morning of the following day. That afternoon he wrote Mrs. McGinnis, telling her he was taking the children to Las Vegas, New Mexico. After they reached Las Vegas two other letters were written, but their local address was not given. The conduct of the defendant clearly indicates that he obtained possession of the children by means of fraud and deceit with the intention of taking them to Las Vegas and thus to deprive their mother of their custody. After about two months Mrs. McGinnis obtained possession of the children through the officers of New Mexico, and they were returned to her at the sanitarium. The defendant was charged, under section 278 of the Penal Code, with forcibly and fraudulently taking the children from their mother with the intention of detaining and concealing them. He was apprehended, tried by a jury and convicted of that offense. A motion for new trial was denied. Prior to the pronouncing of judgment the question of the sanity of the defendant was raised, and he was tried under the provisions of section 1368 of the Penal Code, and found to be insane. The pronouncing of sentence was suspended and he was committed to Mendocino State Hospital. He was subsequently restored to competency and discharged from that institution. At the time set for pronouncing sentence, on application for probation the judgment was suspended on condition that the defendant serve three months of imprisonment in the county jail at Napa. From that judgment and the order denying defendant's motion for a new trial he has appealed.

The appellant contends that the judgment and order should be reversed on the grounds that: (1) The verdict and judgment are not supported by the evidence, chiefly because it affirmatively appears by the uncontradicted evidence there was no attempt to conceal the whereabouts of the children; (2) The court and the prosecuting attorney were guilty of

prejudicial misconduct; and, (3) The court erred in giving to the jury certain instructions.

 We are of the opinion the verdict and judgment are adequately supported by the evidence. There is no doubt the defendant intended, by means of fraud and deceit, to gain possession and control of the children in defiance of the clear terms of the decree of divorce which awards them to their mother, and to remove them from the State of California so as to prevent her from regaining possession of the children. He wrote her a letter from New Mexico declaring that "You will not get them back to California." From the entire conduct of the defendant the jury was warranted in determining that he deliberately planned to steal the children from their legal custodian and to remove them from the state so that she could not recover possession of them. The heading to section 278 of the Penal Code denominates the crime defined therein as "child-stealing." He obtained possession of them under false pretenses. He agreed to take them to the social center, and not to remove them from the grounds of the sanitarium. He deliberately violated that promise. He did not even stop at the social center. He placed them in his automobile and, contrary to the will of their mother, he drove straight away to Nevada and thence down to New Mexico. It is true that it is necessary to prove an intent on the part of an accused person both to detain and conceal the child from its legal custodian. (*People* v. *Black,* 147 Cal. 426 [81 P. 1099].) The jury was so instructed in this case. But the intention with which the crime is committed must necessarily be determined from the conduct of the accused and from all the facts and circumstances of the case. (§ 21, Pen. Code; *People* v. *Smith,* 17 Cal.App.2d 468 [62 P.2d 436].) In the case last cited the court quotes with approval from *People* v. *Simmons,* 12 Cal.App.2d 329 [55 P.2d 297] at page 332, as follows:

"The statute does not include 'concealment' nor 'detention.' It does contain as an element 'with intent to detain and conceal.' As proof of that element the courts will consider the acts and conduct of the parties, together with all the circumstances of the case both before and after the act complained of."

 In the present case it is true that the defendant wrote to his wife from Austin, Nevada, twenty-four hours after he took the children, that he was taking them with him to

New Mexico, and that he subsequently wrote to her twice from Las Vegas, saying, in effect, that he intended to hold possession of them and that she would not get them back to California. It is argued these letters conclusively refute the asserted intention of *concealing* them from their mother. That is a legitimate argument, but we think it is not conclusive. The defendant never disclosed his address at Las Vegas. From subsequent letters written by Mrs. McGinnis it is evident she did not know their local address. She wrote to the officers suggesting a method of discovering their whereabouts. It actually took some time to locate them. The question of the intention with which the defendant seized and retained possession of the children was a matter for the determination of the jury. Its verdict necessarily infers that the jury believed he took the children with the intention of concealing them from their mother. ■ The common definition of the word "conceal" is "to hide or withdraw from observation; to cover or keep from sight." It does not necessarily mean that the concealed individual or hidden object may not be located or found by reasonable means of discovery. We cannot say as a matter of law that the defendant did not intend to conceal the children at the time he took possession of them.

■ The evidence satisfactorily shows that the children were taken from the mother to whom their lawful custody had been duly awarded by the final decree of divorce. The decree of divorce was received in evidence and it specifically awards the custody of the children to Mrs. McGinnis.

■ Neither the district attorney nor the judge was guilty of prejudicial misconduct. The defendant called several witnesses for the purpose of trying to prove that the cottage where Mrs. McGinnis lived with the children was kept in a disorderly manner and that the children were not given suitable care. The evidence of those witnesses does not support that contention. The district attorney objected to further testimony regarding that subject unless it was confined to a reasonable time prior to the taking of the children by the defendant. The testimony which led to the challenged statement of the court occurred as follows:

"Q. Was there anything unusual about the room so far as filth or anything else, that attracted your attention? A. Oh, no, it is just like a normal room of anyone. Q. Will you describe the appearance of the children as you then saw

them? A. When I saw the children that day, of course she had taken them in and put clean clothes on them."

The defendant then proposed to call other witnesses to show "the children's welfare, care of the home." This was objected to. The court inquired, "What materiality would that have, the testimony as to their welfare?" The attorney for the defendant replied, "I wonder if it would be permissible to go back to around the first of the year *on that subject?*" The court then made the reply which is asserted to constitute prejudicial misconduct, as follows: "If you ask me I don't think it is material at all. I don't think any of his testimony [on that subject], if you ask me, is very material." The district attorney also then stated, "I don't either."

Those statements were not assigned as prejudicial. The court was not asked to charge the jury to disregard them. It is clear that they applied only to the evidence adduced by the defendant's witnesses in an attempt to show that the mother did not properly care for the children or her home. That was the only subject then under discussion. The general welfare of the children was really not an issue in this case. The jury could not have reasonably understood the judge to have said or meant that none of the defendant's testimony or evidence on other subjects was material. It certainly did not infer he was not worthy of belief, or that his evidence on other subjects was to be discredited or minimized. Those statements were not prejudicial.

The cases of *People* v. *Pitisci*, 29 Cal.App. 727 [157 P. 502], and *People* v. *Conboy*, 15 Cal.App. 97 [113 P. 703], upon which the appellant relies, are not in point. Each of those cases involved charges of murder. Each was reversed, partly because the remarks of the judge tended to discredit the defendant's testimony and credibility. In the Pitisci case the judge asserted, among other damaging statements made in the presence of the jury:

"It is claimed she took it [the dagger] from him — *an absurdity*. Now, you keep in mind that the defendant himself goes to this place *and he goes armed,* and he is the only person who is armed. It is not claimed that the deceased was armed." (Italics ours.)

Those were statements clearly inferring the guilt of the defendant. Of course they were prejudicial.

In the Conboy case the jury retired and failed to reach a unanimous agreement after a lengthy consideration of the

evidence. They were called into court and were virtually reprimanded for their failure to agree, with the evident suggestion that they should convict the defendant. The statements of the judge amounted to coercion to secure a verdict of conviction. The judge said in part:

"I suggest to you that there is no reason why twelve honest, intelligent, reasonable men should not reach a conclusion in this case, and I am surprised that you have not done so already. . . . Now, go out and do your duty."

The court in the present case did not err in instructing the jury that one is presumed to intend to do that which he actually does; nor did the court err in instructing the jury that the defendant must have intended the natural and probable results of his own conduct. To this instruction there was added: "Acts indicate the intention, and the jury may judge of a man's previous intentions by his subsequent actions." The court then said:

"It is not enough to show that there was an intent to detain minor children, but rather the intent to detain must be accompanied with intent to conceal them from the person having their legal custody and both must exist and be found by the jury or you must return a verdict of not guilty. . . . As proof of the essential element of an intent to conceal and to detain, you will consider the acts and the conduct of the parties together with all the circumstances of the case both before and after the action complained of."

The challenged instruction does not state that the jury may presume that the defendant intended to conceal the children merely because he had taken them from their mother. That very instruction asserts that the intention with which he took the children must be determined from his actions. The application of the language of that instruction could not be misunderstood for it was followed by the specific statement that the jury must find that he took the children with the intention both of detaining and concealing them, and that "the essential element of an intent to conceal and to detain" must be determined from the conduct of the defendant and from "all the circumstances of the case."

The jury was very fully and fairly instructed on all the material issues of the case.

The judgment and the order are affirmed.

Appellant's petition for a hearing by the Supreme Court was denied December 31, 1942.