[Crim. No. 4406. Fourth Dist., Div. One. July 8, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL ANDREW HYATT, Defendant and Appellant.

## COUNSEL

David S. Sperber for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Maury W. Corn, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COUGHLIN, Acting P. J.**—Defendant was charged with the offense of child stealing, a violation of Penal Code section 278; was found guilty by a jury's verdict; was granted probation; and appeals.

Defendant and his wife were parties to a divorce action in which, by an order pendente lite, the minor children of the parties, Troy and Deborah, were placed in the custody of the wife, their mother, with a right of visitation by the defendant on Saturday of each week. Defendant admitted having knowledge of this order. At the trial of the case on May 18, 1965, at which all parties were present, the court orally announced its intended decision to place the custody of the children in the mother with the right of visitation by the defendant on the first Sunday of each month. On June 15, 1965, the court entered an interlocutory decree of divorce awarding custody accordingly. Although denied by defendant, the evidence inferentially supports the conclusion he had knowledge of this order prior to July 4, 1965. On the latter date, a Sunday, defendant came to the mother's home and obtained the children in the exercise of his visitation privilege, which extended from 10 a.m. to 5 p.m. of that day. In the afternoon defendant took the children by airplane to Salt Lake City, Utah; thence to Denver, Colorado; and later to Kansas. The mother did not learn of the whereabouts of the children until December 1967. In the meantime she had attempted to locate them by various means, including the employment of private detectives, and an appearance on a television show in which she begged for their return which produced information resulting in the discovery of their whereabouts. The mother went to Kansas; instituted habeas corpus proceedings; obtained custody of the children; and returned with them to California.

When defendant came for the children on the morning of July 4, 1965, he was driving a rented automobile. He had caused the gas service to his apartment to be terminated on July 2, 1965, and had moved to a motel. While in Colorado and Kansas defendant used the given name of "Brian"

instead of his true name Michael. His daughter Deborah was enrolled in the first grade in school and when defendant and the children moved to Kansas she was about half way through the second grade. Defendant wrote a letter to his brother, the date and place of writing he was unable to recall, in which he said, in pertinent part: "I'm sorry I wasn't able to contact you sooner, but I have been busy establishing a new identity. The kids and I have new birth certificates, and I tried a new line of work since I can't use any references or education background. Debbie just started kindergarten, and as far as anyone is concerned, she is five, and for me, she is willing to pretend.

". . . If any judge thinks I could give that tramp [his former wife] $50 per week with what she made, and see my children one day a month, he is nuts!

"What I have done may make me a fugitive, but to see how happy the kids are, it's worth it and more. . . .

". . . I have to be very cautious. If you wish to ever contact me, put an ad in the personal column of the N.Y. Times—begin Attention Mr. Miller. I will probably see it, as I usually get the paper in the morning." Defendant testified, in substance, any indication in the letter he was in New York was a fabrication.

Before the divorce trial on June 15, 1965, defendant was interviewed by a deputy probation officer in the course of an investigation ordered by the court as to the custody of the children of the parties. During this interview he told the deputy probation officer if the court did not give him custody of the children he would take matters into his own hands. "Every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having the lawful charge of such child, is punishable by imprisonment in the state prison. . . ." (Pen. Code, § 278.)

■ The conduct proscribed by Penal Code section 278 applies to the father of a minor child whose custody has been placed with the mother by court order. (*People* v. *McGinnis*, 55 Cal.App.2d 931 [132 P.2d 30]; see also *Wilborn* v. *Superior Court*, 51 Cal.2d 828, 830-831 [337 P.2d 65]; *Rosefield* v. *Rosefield*, 221 Cal.App.2d 431, 434 [34 Cal.Rptr. 479].) Defendant's contention to the contrary is without merit.

■ Defendant contends the People "failed to establish a prima facie case" because "there was no taking of the children"; the "intent to detain and conceal" is an intent to detain and conceal in California; and the evidence does not establish "the taking was with an intent to conceal in California."

The contention the evidence does not support a finding defendant took the children is premised upon the claim he was entitled to their physical custody in the exercise of his visitation privilege on Sunday, July 4, 1965, between the hours of 10 a.m. and 5 p.m. and, therefore, did not take them within the meaning of the statute. However, the evidence supports the conclusion when defendant took the children on the Sunday in question he used the visitation privilege given him to obtain their physical custody for the purpose of taking them from the custody of their mother in whose charge they had been placed by order of the court, and not for the purpose of visiting with them as permitted by that order. The taking contemplated by the statute is a taking with intent to detain and conceal the child from the person having lawful charge of such child. (Gen. see *People* v. *Bormann,* 6 Cal.App.3d 292, 297 [85 Cal.Rptr. 638]; *People* v. *Wisecarver,* 67 Cal. App.2d 203, 208-209 [153 P.2d 778].) In effect, the defendant, under the pretense of exercising the privilege of visiting with his children pursuant to the court order, obtained their physical custody intending not to return them to the mother as required by the order but to detain and conceal them in defiance of the order. Defendant's conduct was intended to deceive and, as such, was fraudulent. (*People* v. *Wisecarver, supra,* 67 Cal.App.2d 203, 207.)

Contrary to defendant's contention, proof of a violation of the statute does not require proof the taking of a child was with intent to detain and conceal such child in California. ■ Detention and concealment as such are not elements of the offense. (*People* v. *McGinnis, supra,* 55 Cal.App.2d 931, 935; *People* v. *Smith,* 17 Cal.App.2d 468, 472 [62 P.2d 436]; *People* v. *Simmons,* 12 Cal.App.2d 329, 332 [55 P.2d 297].) However, proof of detention and concealment support an inference of an intention to detain and conceal. (*Ibid.*) ■ The fact the detention and concealment occurred in a state other than that in which the child was taken does not foreclose the inference the intention to detain and conceal existed at the time and place of the taking.

Defendant's contention the evidence does not support essential elements of the offense is without merit.

■ At defendant's request the court gave three instructions on, among other things, the issue of intent. One of these was a general instruction on specific intent; the second defined the offense and stated, in substance, the taking must be with the intent to conceal *or* detain the child; and the third, instructed the jury to establish the offense it must be proven, among other things, the defendant took the child with a specific intent to detain *and* conceal such child from the person having the lawful charge of the child. On appeal defendant contends the second instruction was error because the

offense is not established by proof of an intention to detain *or* to conceal but only upon proof of an intention to detain *and* conceal. It is settled an essential element of the offense is an intention both to detain and conceal. (*People* v. *Black,* 147 Cal. 426, 430 [81 P. 1099].) However, any uncertainty in the instructions was created by the defendant who submitted them. Any error therein was invited by him and, under well established principles, he may not now urge such error as a ground for reversal. (*People* v. *Coogler,* 71 Cal.2d 153, 170 [77 Cal.Rptr. 790, 454 P.2d 686]; *People* v. *Phillips,* 64 Cal.2d 574, 580, fn. 4 [51 Cal.Rptr. 225, 414 P.2d 353].)

 Defendant charges the prosecution with misconduct which he urges as a ground for reversal. Our review of the record dictates the conclusion the charge is without foundation. The incidents upon which defendant premises his contention involve questions by or statements of the prosecuting attorney in the course of his cross-examination. In one instance the prosecuting attorney asked a question about which defendant now complains but to which he did not then object. In another instance the prosecuting attorney made a remark of inconsequential significance which, upon objection, the jury was instructed to disregard. In other instances it was the demeanor of the prosecuting attorney rather than the questions asked to which defendant objects. Considered in context, the questions asked and the alleged objectionable demeanor of the prosecuting attorney did not constitute misconduct.

 Defendant also contends the court erred in excluding evidence offered by him; asserts he "indicated, by an offer of proof, that he intended to show that the taking of the children was because of a harmful condition existing in the ex-wife's home"; claims the court sustained an objection to this offer of proof; and also asserts he made similar offers of proof later in the trial which also were denied. Defendant's presentation of the foregoing matters disregards completely the requirement of rule 15, paragraph (a) of California Rules of Court that: "The statement of any matter in the record shall be supported by appropriate reference to the record." Under these circumstances, we may conclude there is no basis for the contention the court erred in refusing to admit evidence material and relevant to a triable issue and assume, there being no showing to the contrary, the record supports the action of the court in the premises. (*Haynes* v. *Gwynn,* 248 Cal.App.2d 149 [56 Cal.Rptr. 82]; *Batchelor* v. *Caslavka,* 128 Cal. App.2d 819, 823 [276 P.2d 64].) Our review of the record discloses the alleged offer of proof by defendant respecting his intention in taking the children was made during a discussion between court and counsel as to the scope of the *voir dire* examination of jurors and not during the trial of the case. Counsel for defendant then contended evidence showing the reasons why defendant took the children was admissible on the issue of

malicious intent. The court expressed the opinion the issues at bench were not coextensive with the issues theretofore tried in the custody proceeding before the court making the custody order; evidence specifying particular acts of misconduct by the mother, particular incidents, particular occurrences, or particular situations would develop issues collateral to those at bench; the trial of the criminal action should not be used to retry the custody action; but evidence relating generally defendant's reasons for taking the children which were relevant to his intent in the premises would be admissible. At no time during the case, either before trial or during the trial, did the defendant make an offer of proof respecting evidence upon the issue in question which in anywise conformed to the requirements of the rule respecting such as stated in *Stickel* v. *San Diego Elec. Ry. Co.,* 32 Cal.2d 157, 163 [195 P.2d 416] and *Byrd* v. *Savage,* 219 Cal.App.2d 396, 402 [32 Cal.Rptr. 881]. During the argument on the scope of the *voir dire* examination of the jury the court advised defendant's counsel he would be permitted to make an offer of proof. Thereafter defense counsel stated: "I naturally hate to make an offer of proof, your Honor, unless it is absolutely essential, but we'll do so and when the Court instructs us we may." However, at no time either during the argument in question or during the trial was an offer of proof actually made. Later, during the same argument, defense counsel said: "May I make this inquiry just before we proceed? In the light of the Court's comments yesterday afternoon and today, may I assume at this time that these statements by the Court are not final rulings, but are advisory? Because I had understood it was the Court's desire that when and if I initiate the presentation of certain evidence that there would be specific rulings on specific types of evidence.

"May I understand this is not at this time any blanket order, as it appears to me it is almost impossible to define the scope and intent of what the Court is generally describing at this time." In response the court stated: "I think that is probably true, but I think that both counsel in this case know what the Court's feelings are as to the law, . . . ." and added he trusted neither counsel would make an obvious attempt to get improper matter before the court. During the trial defendant testified at length respecting his reasons for and motives in taking the children. His testimony was summarized by the court and by his own counsel as follows: He felt his children were being mistreated; they were being hurt physically; their morals were being affected; they were not being raised as a normal boy and a normal girl; they were not being raised as American children; their religious training was being neglected; their mother was insane; they were neglected by their mother; and their mother molested them. The summarization aforesaid is premised upon testimony relating specific acts, occurrences, incidents and conditions. Defendant's contention the court had

refused to admit evidence, included in an offer of proof, material to the issue of malicious intent or otherwise, is without foundation in fact. Furthermore, the court overruled objection to the admission of testimony on this issue and, as noted, permitted defendant to detail the reasons he took the children. Any limitation upon the presentation of evidence by defendant material to the issue whether he maliciously took the children with intent to detain and conceal them was directed to its relevance and was a determination within the proper exercise of the court's discretion in the premises. (Gen. see *People* v. *Vaughn,* 262 Cal.App.2d 42, 47 [68 Cal. Rptr. 366].)

█ Defendant also contends the court abused its discretion when, as terms of his probation, it ordered he should not see his children until the question of visitation had been determined by the court having jurisdiction of the divorce proceedings; and ordered him to make restitution to his former wife for expenses incurred in finding the minor children and restoring them to her custody in an amount and manner to be determined by the probation department, subject to review by the court.

A court may impose conditions of probation which are reasonable and relevant to the offense for which probation is granted. (*In re Peeler,* 266 Cal.App.2d 483, 489 [72 Cal.Rptr. 254].) Absent a showing of abuse of discretion in the premises, conditions imposed will be sustained on appeal. (*Ibid.*)

It was proper, in light of the circumstances of the case, to order defendant not to visit his children until the issue of visitation had been presented to and determined by the court conducting the divorce proceedings. Defendant asserts, in substance, he is in contempt of the court making the custody order and intimates that court will not pass upon the question of visitation because of his contemptuous conduct. This assertion is anticipatory. In the event of a refusal to consider the question of visitation the matter of defendant's probationary condition in the premises may be reviewed by the court trying the criminal action.

The condition requiring reimbursement of the wife for the expenses incurred in finding and recovering her children was reasonable and relevant to the charge of which defendant was found guilty. The offense of child stealing is an offense against the person from whose custody the child was taken. (*Wilborn* v. *Superior Court, supra,* 51 Cal.2d 828, 830; *People* v. *Simmons, supra,* 12 Cal.App.2d 329, 332.) █ Where an offense causes the victim to incur an expense, restitution is a proper condition of probation. █ Although the probation department was ordered to determine

the amount and manner of restitution, its determination was subject to review by the court. No error appears. No abuse of discretion is shown.

The judgment is affirmed.

Whelan, J., and Ault, J., concurred.

A petition for a rehearing was denied July 21, 1971, and appellant's petition for a hearing by the Supreme Court was denied September 2, 1971.