Filed 6/2/26  P. v. Alberry CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JACOB OSSIAN ALBERRY,<br><br>        Defendant and Appellant. | A173036<br><br>(Humboldt County<br>Super. Ct. No. CR2402264A) |

Defendant Jacob Ossian Alberry seeks reversal of his conviction for felony conspiracy to commit petty theft under Penal Code sections 182 and 488[1] following a negotiated disposition of his case.  He argues that the prosecution could only prosecute him for the more specific crime of misdemeanor organized retail theft under section 490.4 pursuant to *In re Williamson* (1954) 43 Cal.2d 651 (*Williamson*).  According to Alberry, the so-called "*Williamson* rule" required that the prosecution prosecute him for this more specific crime, particularly because committing organized retail theft will commonly, if not always, also qualify as engaging in a conspiracy to commit petty theft.

---

[1] Statutory designations are to the Penal Code unless otherwise stated.

1

We disagree.  The *Williamson* rule does not apply to Alberry's case because the Legislature intended conspiracy to commit petty theft and organized retail theft to be different crimes requiring different elements of proof.  In the operative charging document, an information filed after a preliminary hearing, the prosecution did not allege any facts showing that Alberry could be convicted of organized retail theft.  Nor are we persuaded that the prosecution was required to so allege.  The Legislature enacted the organized retail theft statute, section 490.4, to address a growing trend of organized groups of people stealing items for financial gain.  Because this relatively new crime requires proof of a different type of culpability than conspiracy to commit petty theft—an offense for which there is no need to establish theft for financial gain—the *Williamson* rule has no application.

We therefore affirm.

## I. BACKGROUND

In July 2024, the Humboldt County District Attorney's office filed a complaint charging Alberry with three criminal counts regarding events that occurred at a Kohl's store on June 1, 2024.  The district attorney's office alleged that Alberry committed felony conspiracy to commit organized retail theft in violation of sections 182, subdivision (a)(1) and 490.4, subdivision (a)(1) (count 1) and that, in order to carry out the conspiracy, he and another person "drove to Kohl's together, entered and selected items together, and left the store without paying"; committed misdemeanor organized retail theft in violation of section 490.4, subdivision (a)(1) (count 2) in that he and another person "did unlawfully and knowingly act in concert with one or more persons to steal merchandise from [Kohl's] with the intent to sell, exchange, or return the merchandise for value"; and committed misdemeanor petty theft in violation of section 488 (count 3) in that he and another person

2

"did willfully and unlawfully take personal property" from Kohl's having a reasonable and fair market value not exceeding $950.

At the preliminary hearing,[2] evidence was presented that Alberry and another person entered a Kohl's store in Eureka, California through an emergency exit not designated as a public entrance; then, separating, coming back together, and separating again while in the store, took some merchandise, including clothing; and then left together through an emergency exit without paying for the merchandise, got into a car, and drove away.

At the conclusion of the hearing, defense counsel argued the court should not hold Alberry over on the counts involving organized retail theft (counts 1 and 2) because, although there was sufficient evidence presented to hold him over on the petty theft charge (count 3), there was insufficient evidence that he took any merchandise "with the intent to sell, exchange, or return the merchandise for value," a required element of organized retail theft as stated in section 490.4, subdivision (a)(1).[3] Counsel further argued that charging Alberry with conspiracy to commit organized retail theft under section 182—the conspiracy statute—as an alternative was an end-run around the legislative intent to carve out a specific exception for organized retail theft in violation of cases such as *Williamson*, *supra*, 43 Cal.2d 651.

---

[2] The hearing also considered a parole violation charge against Alberry that is not a part of this appeal and which we do not discuss further.

[3] Section 490.4, subdivision (a)(1) states that a person is guilty of organized retail theft if, among other things, the person "[a]cts in concert with one or more persons to steal merchandise from one or more merchant's premises or online marketplace with the intent to sell, exchange, or return the merchandise for value."

The prosecutor responded that Alberry and his associate did not try on any of the merchandise. From this, he contended, it could be inferred that they did not take the merchandise for personal use, which was sufficient evidence to hold Alberry over for organized retail theft under counts 1 and 2.

The court found sufficient evidence to hold Alberry over for trial on the petty theft charge (count 3) under the "exceedingly low standard" for doing so. It reached the same conclusion on conspiracy to commit organized retail theft (count 1) and organized retail theft (count 2), while commenting that counts 1 and 2 "in essence, have the same elements, I think." The court anticipated the defense would raise the intent to sell, exchange, or return for value issue again in a section 995 motion and opined that at trial the prosecution would "likely need . . . additional evidence to show that there was some sort of intent to sell, exchange, or return that merchandise for value."

After the preliminary hearing, the district attorney's office dropped the conspiracy to commit organized retail theft and organized retail theft charges previously brought under sections 182 and 490.4. Instead, the office charged Alberry in an information with first, felony conspiracy to commit petty theft in violation of sections 182, subdivision (a)(1) and 488 (count 1) in that he and another person "drove to Kohl's together, entered and selected items together, and left the store without paying"; and, second, misdemeanor petty theft in violation of section 488 as was alleged in the complaint (count 2).

Alberry filed a motion under section 995 to set aside the information. He argued, among other things, that pursuant to *Williamson*, the prosecution was barred from pursuing its conspiracy to commit petty theft count against him as an alternative to the more specific charge of organized

4

retail theft, section 490.4. Alberry contended that engaging in a conspiracy and acting "in concert" (an element of organized retail theft) involved "ultimately a distinction without a difference."

At the hearing on Alberry's section 995 motion, the prosecutor argued the court should deny the motion for multiple reasons. First, conspiracy and organized retail theft are different crimes, including because organized retail theft requires elements be proven that are not required under conspiracy and conspiracy was only an "inchoate" crime; second, conspiracy and acting in concert are "different ideas"; and, third, section 490.4, the organized retail theft statute, was established for a different type of crime, with "40, 50, 100 people going in and doing a smash and grab."

The court denied Alberry's section 995 motion. It concluded the prosecution had the choice of how to charge. The prosecution could and did—correctly in the court's view—"recalibrate" and file an information based on petty theft in violation of section 488, which was understandable since the prosecution would have a difficult time at trial showing that Alberry acted with the intent to sell, exchange, or return merchandise for value as required to prove organized retail theft. The court further concluded that, given the prosecution's election to charge Alberry for petty theft under section 488 rather than for organized retail theft under section 490.4, attaching a count 1 conspiracy was "not . . . beyond the pale."

Alberry subsequently entered a guilty plea to count 1, felony conspiracy to commit petty theft in violation of sections 182, subdivision (a)(1) and 488. The court found him guilty of that crime and dismissed count 2. It sentenced him to 16 months in prison, awarded him custody credits, and imposed certain fines and fees. A timely notice of appeal followed. The trial court granted Alberry's request for a certificate of probable cause so

5

that he could appeal the court's denial of his section 995 motion and bring before this court the applicability of the *Williamson* rule to the conspiracy charge.

## II. DISCUSSION

Alberry argues that the *Williamson* rule bars prosecution of him for conspiracy to commit petty theft under sections 182, subdivision (a)(1) and 488[4] in light of the purportedly more specific statute prohibiting organized retail theft, section 490.4. On that ground, he asks that we reverse his conspiracy conviction, dismiss the conspiracy charge with prejudice, and direct the trial court to permit him to withdraw his plea.

### A. *Legal Standards*

#### 1. The *Williamson* Rule

In *Williamson*, *supra*, 43 Cal.2d 651, the California Supreme Court held that Williamson should not have been convicted of felony conspiracy to contract without a license in violation of Business and Professions Code section 7028 under the general conspiracy statute, section 182, because the Legislature intended the more specific misdemeanor conspiracy statute contained in Business and Professions Code former section 7030 (added by Stats. 1939, ch. 37, § 1, p. 384; repealed by Stats. 1963, ch. 1883, § 2, p. 3867) to control. (*Williamson*, at pp. 653–655.) The court adopted the " 'general rule that where the general statute standing alone would include the same matter as the specific act, and thus conflict with it, the special act will be

---

[4] Section 182, subdivision (a)(1) provides that "[i]f two or more persons conspire" "[t]o commit any crime," they are punishable for conspiracy to commit a crime, a felony.

Section 488 prohibits petty theft.

6

considered as an exception to the general statute whether it was passed before or after such general enactment.' " (*Id*. at p. 654.)

This "*Williamson* rule" (*People v. Murphy* (2011) 52 Cal.4th 81, 86), sometimes referred to as an "inference" (*People v. Irwin* (1984) 155 Cal.App.3d 891, 899 (*Irwin*)), is used " 'to ascertain and carry out legislative intent.' " (*Murphy*, at p. 86.) Under it, "if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute. In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be prosecuted under either statute. [Citation.] 'The rule is not one of constitutional or statutory mandate, but serves as an aid to judicial interpretation when two statutes conflict.' [Citation.] . . . 'The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and "requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision . . . ." [Citation.]'

"Absent some indication of legislative intent to the contrary, the *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' [Citation.] In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute. . . ." (*People v. Murphy*, *supra*, 52 Cal.4th at p. 86.)

7

" 'Typically the issue whether a special criminal statute supplants a more general criminal statute arises where the special statute is a misdemeanor and the prosecution has charged a felony under the general statute instead.  [Citations.]  Such prosecutions raise a genuine issue whether the defendant is being subjected to a greater punishment than specified by the Legislature, and the basic question for the court to determine is whether the Legislature intended that the more serious felony provisions would remain available in appropriate cases.' " (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1250, fn. 14.)  The *Williamson* rule is "necessary to prevent a general statute from swallowing up the exceptions contained in specific enactments." (*People v. Mayers* (1980) 110 Cal.App.3d 809, 814.)

"It is not correct to assume that the rule is inapplicable whenever the general statute contains an element not found within the four corners of the 'special' law.  Rather, the courts must consider the *context* in which the statutes are placed.  If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute." (*People v. Jenkins* (1980) 28 Cal.3d 494, 502; see People v. *Mayers*, *supra*, 110 Cal.App.3d 809 [§ 332, the specific misdemeanor statute prohibiting three-card monte, prevailed over § 182, subd. (a)(4), the general felony conspiracy to defraud statute, because § 332 would otherwise be voided]; *People v. Ruster* (1976) 16 Cal.3d 690, 699 [although forgery and unemployment insurance fraud contain different elements, applying for aid

under a false identity is "one of the most common forms of unemployment insurance fraud"].)[5]

By contrast, the *Williamson* rule does *not* apply when the statutes at issue "contemplate different kinds of culpability or criminal activity." (*People v. Watson* (1981) 30 Cal.3d 290, 297; see *id.* at pp. 295–297 [*Williamson* rule inapplicable where the general crime of murder requires malice, which is not required for the more specific crime of vehicular manslaughter]; see also *Hudson v. Superior Court* (2017) 7 Cal.App.5th 999, 1007 [*Williamson* rule inapplicable when "a felony statute requires a more culpable mental state than a misdemeanor statute proscribing the same behavior"].) "Where penal statutes addressing analogous conduct are differentiated by kinds of culpability . . . [t]he differential in culpability justifies the penological disparity and the inference underlying the *Williamson* rule is dispelled." (*Irwin*, *supra*, 155 Cal.App.3d at p. 899 [holding that the additional element of malice in the general statute "imports a higher level of culpability" that dispelled *Williamson* inference].)

### 2. The Crimes at Issue in this Case

Alberry was prosecuted for conspiracy to commit petty theft, but contends he could only have been prosecuted for organized retail theft.

The general conspiracy statute, section 182, provides in subdivision (a)(1) that "[i]f two or more persons conspire" "[t]o commit any crime," they are punishable for conspiracy to commit a crime, a felony.

The petty theft statute, section 488, follows section 487's prohibition of "grand theft," meaning theft of something exceeding $950 in value with

---

[5] In *People v. Jenkins*, *supra*, 28 Cal.3d 494, the court disapproved of language in *People v. Ruster* stating "that 'a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute.'" (*Jenkins*, at p. 503, fn. 9.)

certain exceptions not argued to apply here, and sections 487a through 487k and section 487m, defining other circumstances constituting grand theft, petty theft, or a public offense that are not argued to apply here. Section 488 provides, "Theft in other cases is petty theft."

The organized retail theft statute, section 490.4, states in relevant part that a person who "[a]cts in concert with one or more persons to steal merchandise from one or more merchant's premises or online marketplace with the intent to sell, exchange, or return the merchandise for value" "is guilty of organized retail theft." (§ 490.4, subd. (a)(1).) These acts are punishable by imprisonment in county jail for a period not exceeding one year. (§ 490.4, subd. (b)(2).)

### 3. Standard of Review

The question of whether the *Williamson* rule applies to Alberry's conspiracy conviction turns on statutory interpretation. " 'Insofar as the Penal Code section 995 motion rests on issues of statutory interpretation, our review is de novo.' [Citation.] ' " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' [Citation.] 'We consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

### B. *Analysis*

Alberry argues that he could only be prosecuted for the more specific crime of organized retail theft under section 490.4 because "a violation of the organized retail theft statute will commonly, if not always, result in a violation of the general conspiracy to commit petty theft. A defendant who acts in concert with others to '. . . steal merchandise from one or more

10

merchant's premises or online marketplace with the intent to sell, exchange, or return the merchandise for value' cannot help but risk prosecution for conspiracy to commit petty theft. ([§] 490.4[, subd. ](a)(1).) It is no coincidence that in the present case, the People first charged Alberry with organized retail theft."

The People disagree, arguing that the *Williamson* rule does not apply to Alberry's case "because the conspiracy and organized retail theft statutes target different criminal acts and levels of culpability." They point out that, as we have discussed, "[w]here penal statutes addressing analogous conduct are differentiated by kinds of culpability . . . [t]he differential in culpability justifies the penological disparity and the inference underlying the *Williamson* rule is dispelled." (*Irwin, supra,* 155 Cal.App.3d at p. 899; see also *People v. Watson, supra,* 30 Cal.3d at pp. 295–297; *People v. Powers* (2004) 117 Cal.App.4th 291, 299 [*Williamson* rule does not apply because the general statute has a scienter requirement absent in the more specific regulation and, therefore, a violation of the regulation would not commonly result in a violation of the statute].)

The People contend "the culpability discrepancy between the conspiracy and organized retail theft statutes shows the Legislature meant to target different transgressions and refutes any inference that section 490.4 was meant to preempt prosecution under the conspiracy statute." More specifically, the People argue that a conspiracy requires an agreement to commit a crime and, therefore, involves a different type of culpability than "acting in concert," an element of the organized retail theft statute, which relates only to the execution of theft in association with others who are not necessarily conspirators.

11

The People have the better of the argument. We decline to apply the *Williamson* rule on this record in light of the different types of culpability involved with the respective crimes at issue. Stating our conclusion more specifically, we believe there is a material difference between the type of culpability involved with the offense of conspiracy to commit *petty theft*, the actual charge the prosecution brought in its information below, and organized retail theft, the charge Alberry contends was the only one that could have been brought against him. Conspiracy to commit petty theft does not require proof that organized groups of people stole for financial gain, a showing required under the relatively new crime of organized retail theft.

The People contend this difference in culpability indicates the Legislature intended the organized retail theft statute to address a different crime than conspiracy to commit petty theft. We agree. Section 490.4 was originally enacted via Assembly Bill No. 1065, effective January 1, 2019. (Stats. 2018, ch. 803, § 1.) According to the author of the bill, section 490.4 was needed because "[i]n 2017, the National Retail Federation (NRF) conducted the Organized Retail Crime Survey and found that organized retail theft continues to be pervasive within the industry. The survey stated that 95% of merchants reported having been a victim of coordinated theft, resulting in revenue losses estimated at $30 billion per year. NRF define[d] organized retail crime as theft/fraudulent activity conducted with the intent to convert illegally obtained merchandise, cargo, cash, or cash equivalent into financial gain, often through subsequent online or offline sales. Organized retail crime typically involves a criminal enterprise that organizes multiple theft rings at a number of retail stores and employs a fencing operation to sell the illegally-obtained goods for financial gain. Organized retail crime can also simply involve the recruitment of others to steal on

12

another's behalf.  Despite this growing trend in various forms of 'Organized Retail Crime,' California has never adopted a Penal Code section making it a crime.  Therefore, new laws facilitating better collaboration between law enforcement and businesses are necessary to improve our justice system's responses to chronic theft." (Sen. Com. on Public Safety, com. on Assem. Bill No. 1065 (2017–2018 Reg. Sess.), as amended Feb. 27, 2018, pp. 4–5; Sen. Com. on Public Safety, com. on Assem. Bill No. 1065 (2017–2018 Reg. Sess.), as amended Aug. 7, 2018, p. 5 [same].)

In short, the Legislature passed section 490.4 in an effort to address a growing trend of coordinated thefts, often organized by criminal enterprises with multiple theft rings and a fencing operation, all operating in a coordinated way to steal goods that are then sold for financial gain.  This is a more sophisticated crime with more elements to be proved than conspiracy to commit petty theft, not just a more specific version of it.  The issue here boils down to whether, in passing section 490.4, the Legislature intended to preempt the more general conspiracy statute, section 182.  We think not.  Instead, we discern a legislative intent to create an additional enforcement tool tailored to address an emerging new class of criminal activity, thereby giving prosecutors greater flexibility to deal with the problem.  But we see no suggestion of any preemptive intent to make section 490.4 the exclusive enforcement vehicle for this emerging class of criminal activity.  Alberry's proposed application of the *Williamson* rule would turn the Legislature's intent on its head, since the People would be forced to proceed with an organized retail theft charge that, in some circumstances, may be more difficult to prove than conspiracy to commit petty theft.  Indeed, that seems to explain what occurred here.  The prosecution's decision to charge Alberry with conspiracy to commit petty theft rather than organized retail theft

13

appears to be based on its recognition of the different culpability that must be proved in support of an organized retail theft charge. As the record indicates, the prosecution dropped its complaint charges of organized retail theft and conspiracy to commit *organized retail theft* after Alberry asserted, and the court suggested, that there was insufficient evidence that Alberry took any merchandise "with the intent to sell, exchange, or return the merchandise for value," a required element of organized retail theft under section 490.4, subdivision (a)(1). This "theft for financial gain" element (as opposed to for personal use, for example) need not be shown to prove a charge of conspiracy to commit petty theft, and the prosecution did not make any attempt to meet this element in its information allegations.

Two cases, *People v. Montalvo* (2019) 36 Cal.App.5th 597 (*Montalvo*), and *People v. Lucero* (2019) 41 Cal.App.5th 370 (*Lucero*), seem to us most instructive.

In *Montalvo*, *supra*, 36 Cal.App.5th 597, defendant Montalvo and an associate posed as undercover police officers to steal items from individuals in two separate incidents. (*Id*. at pp. 601, 603–607.) Montalvo was convicted of various crimes, including robbery in the first and second degree in violation of sections 211 and 212.5. (*Montalvo*, at pp. 601–602.) On appeal, Montalvo argued the *Williamson* rule required that he could only have been tried regarding the conduct in which he allegedly engaged under section 530, which prohibited false personation, and section 532, which prohibited false pretenses, because the Legislature intended these to be more specific statutes than section 211, the general robbery statute. (*Montalvo*, at pp. 602, 620–624.)

The appellate court noted that the underlying rationale for the *Williamson* rule included a legislative focus on a particular type of *conduct*

14

by the defendant as deserving a particular punishment.  (*Montalvo*, *supra*, 36 Cal.App.5th at p. 622.)  The court continued, "Because the *Williamson* rule 'prohibits prosecution under a general statute when the *conduct at issue is covered under a more specific statute*' [citation], a necessary predicate to the application of the rule is that the defendant's conduct fits the elements of the assertedly more specific statute."  (*Ibid*., original italics.)  It rejected Montalvo's argument because his "conduct [wa]s not covered by the statutes defendant relies upon and thus, defendant could not be convicted under either statute."  (*Ibid*.)  Section 530 required him to *receive* property intended for the police officer he impersonated, but he was alleged to have *taken* property from victims who were not alleged to have intended it for that police officer.  (*Montalvo*, at pp. 622–623.)  Similarly, section 532 required that the owner of the property consensually transfer property in reliance on a false pretense, but there was no consensual transfer alleged.  (*Montalvo*, at p. 623.)  The court held, "[Montalvo's] conduct is not covered by sections 530 or 532.  Thus, he could not be convicted of these assertedly more specific statutes.  Accordingly, a prosecution for robbery cannot be preempted under the *Williamson* rule by offenses [Montalvo] did not commit."  (*Ibid*.)

In *Lucero*, *supra*, 41 Cal.App.5th 370, defendant Lucero submitted declarations from petition signers containing false information in seeking an injunction to halt a petition drive to recall her from her position as a city council member, and also submitted these declarations to law enforcement.  (*Id.* at p. 379.)  She was found to have duped several people into signing these declarations and convicted of preparing false writings with the intent to produce them for a fraudulent or deceitful purpose, a felony violation of section 134.  (*Lucero*, at p. 379; § 134.)  On appeal, she sought reversal based on, among other things, her contention that the more specific statutes for

perjury, section 118, and subornation of perjury, section 127, not the more general statute, section 134, covered her conduct and should have been the bases for any prosecution of her. (*Lucero*, at pp. 379–380, 404–410.)[6]

The *Lucero* court, relying on *Montalvo*, also noted that the underlying rationale for the *Williamson* rule included a legislative focus on a particular type of *conduct* by the defendant as deserving a particular punishment and that, therefore, a necessary predicate to the application of the *Williamson* rule was that a defendant's conduct fit the element of the more specific statute. (*Lucero, supra*, 41 Cal.App.5th at p. 406.) The court held that, because there was no agreement between Lucero and the declarants to provide false information and the declarants neither willfully nor with knowledge of their falsity made the statements at issue, "neither perjury nor subornation of perjury cover[ed] [Lucero's] conduct regarding the petition signers' declarations. Consequently, [Lucero] could not be convicted of these assertedly more specific statutes and the *Williamson* rule does not apply. A prosecution for section 134 cannot be preempted under the *Williamson* rule by offenses [Lucero] did not commit." (*Id*., at p. 407; see *id.* at pp. 406–407.)

Here too, the prosecution did not seek to convict Alberry of organized retail theft, nor make allegations sufficient to support such a charge. Alberry fails to establish that the prosecution was required to do so. Given these circumstances, and the legislative history we have discussed, we conclude the *Williamson* rule does not apply, and the prosecution was free to

---

[6] Lucero also submitted a declaration of her own for which she was convicted under section 134, which she also argued was prohibited under the *Williamson* rule in light of the more specific perjury statute. The court rejected this argument as well, but under an analysis regarding the severity of punishment provided for in these statutes that is not relevant here. (See *Lucero, supra*, 41 Cal.App.5th at pp. 407–410.)

allege conspiracy to commit *petty theft*.  Accordingly, we reject Alberry's argument that, under the *Williamson* rule, we must reverse his conviction for conspiracy to commit petty theft.

### III. DISPOSITION

The judgment is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.