[Crim. No. 16798. Second Dist., Div. One. Apr. 2, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
HERMANN BORMANN, Defendant and Appellant.

## COUNSEL

Clifford Douglas, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marilyn Mayer Moffett, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**GUSTAFSON, J.**—The accusatory pleading charged defendant with a violation of section 278 of the Penal Code in that from November 10, 1966, through March 12, 1968, he did "maliciously, forcibly and fraudulently take and entice away a minor child, Nancy Viola Lawson, aged nine years, with intent then and there to detain and conceal such minor child from Loretta Sue Lawson, the mother of such child." Defendant was convicted of that offense in a nonjury trial and appeals from the judgment of conviction.

The evidence is insufficient to support the conviction and we reverse the judgment.

The only witnesses who testified at the trial were the minor child, her mother and defendant. The child was born January 12, 1959. Her father was married to her mother, but the parents had separated by the time defendant met the mother in 1962. Defendant began living with the mother. The couple lived together in California, except for a brief time when they lived in Oklahoma, until the middle of 1965. The mother testified that the child was known as Nancy Lawson, although she admitted that she did not know by what name the child was known at school since defendant had registered the child at school. The child testified that her name was Nancy Bormann during the time that her mother lived with the defendant in California.

In the middle of 1965, the defendant, the mother and the child went to Morelia, Mexico, where they stayed about two months. When the defendant

and the mother returned to California, they left the child in Morelia with a woman known to the child as "Grandma."

Defendant ceased to live with the mother about February 1966. Two months later he went to Mexico. For some undisclosed reason, "Grandma" took the child in late 1965 from Morelia to Tijuana, Mexico, where she was left with an unidentified family. Defendant located the child in Tijuana, told the child that her mother was dead and took the child to Los Angeles.

In November 1966 defendant placed the child in school in Los Angeles under the name of Nancy Bormann. In the school years of 1966-67 and 1967-68 defendant enrolled the child in various schools in the Los Angeles area under the name of Nancy Bormann. Defendant was arrested in March 1968 for a sex crime against the child, a charge of which he was later found not guilty. In the meantime the authorities located the child's mother who came to Los Angeles to get the child. Immediately after defendant's acquittal in the sex crime case defendant was charged in this case.

Under the doctrine of *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206], defendant contends that the failure to charge him with child stealing together with the sex offense bars the prosecution of child stealing after he was acquitted of the sex offense. We do not reach that point.

Section 278 of the Penal Code provides: "Every person who maliciously, forcibly, or fraudulently takes or entices away any minor chlid with intent to detain and conceal such child from its parent, guardian, or other person having the lawful charge of such child, is punishable by imprisonment in the state prison not exceeding twenty years."

The defendant took the child in Tijuana, Mexico. ■ The fact that he falsely represented to the child that her mother was dead was sufficient proof that he fraudulently took the child. ■ The facts that he did not deliver the child to her mother and that he made no attempt to apprise the mother of the whereabouts of the child are sufficient proof that he acted "with intent to detain and conceal such child from its" mother.

The accusatory pleading alleges that the single crime was committed continuously from November 10, 1966, through March 12, 1968. During the trial the judge said: "I do accept the testimony that the defendant kept [the child] over this period of time, giving her a series of false stories as to her mother having been killed and . . . registering her in school, and I feel that is enough." When the trial judge found defendant guilty, he said: "I find that the taking or enticing away, upon which the Court is relying, occurred at the time the child was removed by Mr. Bormann from Tijuana to the United States, a date outside the pleadings, as far as any evidence

shows, and continued thereafter as a continuous taking and he brought her to Los Angeles, registered her in the school, the first school, and then in the subsequent schools. . . . I believe that this offense can be looked upon somewhat as a continuing offense during the entire time that this defendant is concealing this child." The Attorney General in his brief takes a similar view of the elements of the crime. He says that "the act of enticing and fraudulently *keeping* the minor child from her mother occurred in Los Angeles" and "that both the act of *concealing* Nancy and the intent occurred in Los Angeles County." (Italics added.)

Some support for the position of the trial judge and the Attorney General appears in *Wilborn* v. *Superior Court* (1959) 51 Cal.2d 828 [337 P.2d 65] where the Supreme Court, citing a Missouri case, said: "The statute was apparently designed to protect parents against the worry and grief which necessarily follow the 'decoying away *and retaining* of their children.' " (Italics added.) The statement was, however, dictum since the case did not involve the question of whether detention is an element of the crime. ■ We think it is clear that neither detention nor concealment is an element of the crime. In *People* v. *Edenburg* (1928) 88 Cal.App. 558 [263 P. 857] the court said that there need be no "actual concealment and actual detention." Similarly, in *People* v. *Simmons* (1936) 12 Cal.App.2d 329 [55 P.2d 297] the court said: "The statute does not include 'concealment' nor 'detention'. It does contain as an element 'with intent to detain and conceal.' " Quite clearly the criminal act is committed when a person, with intent to detain and conceal the child from its parent (regardless of whether detention and concealment occur), takes or entices away a child. Whether detention and concealment are accomplished is immaterial.

If the crime can be said to continue over a long period of time, it can do so only if a taking or enticing can occur continuously. Webster's New International Dictionary (3d ed.) devotes more than one full page to the definition of the word "take." Although a period of time may be involved when one "takes" something or someone from one place to another, it is more common to equate "take" with "seize" without any element of asportation. Thus the "taking of personal property" referred to in the crime designated robbery (Pen. Code, § 211) "implies the physical seizure of something tangible." (*People* v. *Sanchez* (1939) 35 Cal.App.2d 316 [95 P.2d 462].) ■ We think that defining "takes" as the equivalent of "seizes" will better serve the People in the long run. Suppose, for example, that a child wanders into a stranger's home and the stranger, wanting to keep the child, simply refuses to let the child go. Although that situation is not before us, we think that one who does this "takes" the child.

But if a taking includes movement of what is taken, the question arises as to what extent movement must go. It is patent that movement should not be held insufficient because the distance of the movement falls short of the intent of the mover. If a defendant seizes a child in San Diego with the intention of taking the child to San Francisco, it should be no defense that he is apprehended in Los Angeles before he gets to San Francisco.

Thus in *People* v. *Munos* (1927) 84 Cal.App. 6 [257 P. 549] the court said: "The crime was *complete* the moment the defendants enticed and took the child away with intent to detain and conceal her from her father . . . ." (Italics added.) In *People* v. *Wisecarver* (1944) 67 Cal.App.2d 203 [153 P.2d 778] the court said: "The crime of child stealing might be found to have been *complete* the moment defendant transported [the child] from the environs of his home with intent to detain and conceal him from his parents." (Italics added.) If the crime is completed, it cannot be continuing.

■ The statute refers to one "who takes or entices away any minor child," but does not state from where or from whom the taking must occur.

We think that "from where" means from wherever the child happens to be at the moment of the taking. ■ Defendant took the child from the family with which she resided in Tijuana, Mexico. A person "takes a vehicle" in violation of section 10851 of the Vehicle Code even though he moves the vehicle only 20 feet. (*People* v. *White* (1945) 71 Cal.App.2d 524 [162 P.2d 862].) We therefore believe that defendant had completed the act of taking the child before he reached the United States border.

It is a "general principle, that, ordinarily, a state does not impose punishment for acts done outside its territory." (*People* v. *Buffum* (1953) 40 Cal.2d 709 [256 P.2d 317].) An exception is found in section 27 of the Penal Code which makes liable to punishment "[a]ll who commit any offense without this state which, if committed within this state, would be larceny, robbery, or embezzlement under the laws of this state, and bring the property stolen or embezzled, or any part of it, or are found with it, or any part of it, within this state." The case at bench, of course, does not involve larceny, robbery or embezzlement.

■ The Attorney General relies on section 784 of the Penal Code which provides that the "jurisdiction of a criminal action . . . [f]or decoying, taking, or enticing away any minor child, with intent to detain and conceal it from its parent, guardian, or other person having the lawful charge of the child . . . [i]s in any competent court within the jurisdictional territory in which the offense was committed, or in the jurisdictional territory out of which the person upon whom the offense was committed was taken

or within the jurisdictional territory in which an act was done by the defendant in instigating, procuring, promoting, or aiding in the commission of the offense . . . ." That section is one of several in a chapter entitled "Of the Local Jurisdiction of Public Offenses." It is quite obvious that for the most part these sections govern "venue where acts occur in two or more counties" of this state. (*People* v. *Buffum* (1953) 40 Cal.2d 709 [256 P.2d 317].) But as the court stated in *Buffum,* where courts are confronted with acts outside of California which would be crimes if done in California, courts in construing the sections are "limited by the operation of the general principles . . . that a state ordinarily does not impose punishment for acts done in other jurisdictions and that, in the absence of a contrary intent, its statutes will not be read as seeking to regulate conduct beyond its borders."

Thus in *Buffum* the defendants in California conspired to and did send women to Mexico for abortions. Their convictions were reversed. The Attorney General sought unsuccessfully to invoke section 778a of the Penal Code which provides: "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of such intent, which culminates in the commission of a crime, either within or without this state such person is punishable for such crime in this state in the same manner as if the same had been committed entirely within this state." The court held that the section does "not apply unless acts are done within the state which amount at least to an attempt." Similarly, in *People* v. *MacDonald* (1938) 24 Cal.App.2d 702 [76 P.2d 121] defendant and his daughter, while in California, formed an intent to marry and then traveled on a train from California to Arizona where the marriage was performed. They then returned to California. Defendant's conviction for having contracted an incestuous marriage was reversed, the court finding section 778a of the Penal Code inapplicable.

Thus in the case at bench if defendant formed an intent in Los Angeles County to go to Mexico to "take" the minor child and carried out his intent, he could not be convicted of child stealing. Section 784 of the Penal Code does not purport to give California jurisdiction except where an "offense was committed." An "offense" obviously is a breach of California law. Stealing a child in Mexico is not an offense against California laws.

There is a second reason why the conviction cannot be sustained which involves the question of from whom the child must be taken. In *People* v. *Edenburg* (1928) 88 Cal.App. 558 [263 P. 857] the court said "that section 278 [of the Penal Code] was intended to guard all minor children against those who would entice them away from their natural

guardians, their parents, or from their legal guardians." ▮ Section 278 of the Penal Code should be read as though it contained the words "from its parent, guardian, or other person having the lawful charge of such child" after the words "takes or entices away any minor child."

▮ In the case at bench, the child was in the physical custody of the mother when the mother and the defendant went to Mexico. The mother voluntarily left the child in the physical custody of the person referred to as "Grandma." If we assume that "Grandma," through the consent of the mother, had "the lawful charge of such child," there is nothing in the record to show that "Grandma" in turn had any right to place the child with a family in Tijuana. The mother was unaware of this placement and thus the family in Tijuana cannot be said to have had "the lawful charge of such child."

The mother testified that for about two years prior to the time that the authorities returned the child to her, she worried about the child because she learned that the child was no longer at Morelia, Mexico, where it had been left. If, as the Supreme Court said in *Wilborn,* the child stealing statute is designed to protect a parent against "worry and grief" when the parent does not know the whereabouts of the child, the removal of the child from Morelia to Tijuana was the act which initiated the mother's worry and grief. Although the act of the defendant in taking the child from Tijuana prolonged the mother's worry and grief, the defendant was not the originating cause.[1]

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.

---

[1]Although the mother testified that she had been told that defendant took the child from Morelia to Tijuana, the trial judge on several occasions remarked that the mother was unworthy of belief. The child testified that it was "Grandma" who took her from Morelia to Tijuana. In any event, the Attorney General in his brief recites the fact to be that the child "was taken to Tijuana by a woman called Grandma where she was left with another family that had children."