[No. A020984. First Dist., Div. Three. Feb. 10, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN RIOS, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rule 976.1, the portion of the opinion certified for publication follows.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Monica Knox, Chief Assistant State Public Defender, and Jean R. Sternberg, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Martin S. Kaye and John W. Runde, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MERRILL, J.—Appellant Juan Rios was convicted by a jury of one count of concealment or detention of a child in violation of a custody order (Pen. Code, § 278.5)[1] and one count of felonious false imprisonment (§§ 236, 237).[2] He appeals from the judgment of conviction.

### I

Appellant and Georgia Hilgeman (Hilgeman) first met as graduate students at San Jose State University. They were married in August 1971. Appellant was a Mexican citizen at the time and a native of Acambaro, Guanajuato, Mexico. Hilgeman was of Greek descent.

They remained married for approximately four years. During this time, they both completed their educations. Appellant joined the faculty of Laney and Vista Colleges and taught at the Oakland Street Academy. Hilgeman obtained a masters degree in counselor education and a B.A. in social services. They lived in Hayward.

Their marriage was a stormy one. The reasons for the turbulence are in dispute. According to Hilgeman, she was a battered wife throughout the marriage. Appellant denied beating or abusing her. According to appellant, the cause of the turmoil was Hilgeman's consumption of alcohol and marijuana.

In April of 1975, Hilgeman consulted an attorney about obtaining a dissolution of their marriage. Following the consultation, however, she relented for a time in her determination to end the marriage, knowing she was four months pregnant and hoping things would improve. Hilgeman testified that she told appellant about the consultation about a month after it had taken place and he responded: "If you try to screw me, I'll take the kid to

---

[1]Unless otherwise indicated, all statutory references are to the Penal Code.

[2]Section 278.5, which has since been amended, at that time provided as follows: "Every person who in violation of a custody decree takes, retains after the expiration of a visitation period, or conceals the child from his legal custodian, and every person who has custody of a child pursuant to an order, judgment or decree of any court which grants another person rights to custody or visitation of such child, and who detains or conceals such child with the intent to deprive the other person of such right to custody or visitation shall be punished by imprisonment in the state prison . . . ."

Section 236 provides: "False imprisonment is the unlawful violation of the personal liberty of another."

Section 237 provides: "False imprisonment is punishable by fine not exceeding one thousand dollars ($1,000), or by imprisonment in the county jail not more than one year, or by both. If such false imprisonment be effected by violence, menace, fraud, or deceit, it shall be punishable by imprisonment in the state prison."

Mexico and you'll never see it again." Shortly thereafter, Hilgeman left appellant and moved to San Jose. The couple's child, Monica Rios, was born on September 19, 1975.

Dissolution proceedings began in December 1975. According to both sides, these proceedings were unusually acrimonious. The couple fought heatedly over the settlement of their property and custody of Monica. Hilgeman requested legal custody of the child with reasonable visitation rights for appellant. Appellant, on the other hand, sought joint custody of the girl for bicultural reasons. Hilgeman testified that during these proceedings, appellant repeatedly told her that he "didn't want any Gringos raising his kid."

Custody hearings were held July 7 and 19, 1976. Thereafter, the court awarded physical custody of the child to Hilgeman and visitation rights to appellant.

Subsequent to the court's ruling, appellant exercised his visitation rights relative to Monica. It was on the occasion of one of his seemingly routine visits, however, that appellant, through his actions, set in motion a chain of events which would alter the lives of these individuals for years to come, and become the subject of the instant proceedings.

On Saturday, October 16, 1976, appellant arrived in his car at Hilgeman's residence as usual to pick up Monica for a weekend visit. Hilgeman brought the child out to the car. Before departing, appellant allegedly told Hilgeman he would return Monica the next day. In reality, however, it would be four years before Hilgeman would see her daughter again. For on this day, appellant formalized plans to secretly take Monica to Mexico.

As part of his plans to abduct the child, appellant engineered a cover-up. He first took Monica to Oakland, to a street fair. At the fair, he left the child in the car under the care of one Fidel Tores, a friend of his cousin. Next, he tracked down some police officers who were patrolling the fair and reported that Monica was missing. The officers later testified that appellant told them that a black woman in her mid-thirties had been playing with the child just prior to her alleged disappearance. After searching the area without success, the officers said they talked to appellant again. He told them that he was sure Monica was in good hands and would be returned.

At approximately 9:30 p.m. that evening, appellant filed a formal missing person's report with the Oakland Police Department. From here, the sequence of events is uncertain, but appellant gives the following account:

appellant then returned to his car where Monica and Tores awaited him and proceeded to drive directly to Tijuana, Mexico. Once there, he placed the girl in the hands of his first cousin and his first cousin's wife, Miguel and Maria Rios. He then returned to Oakland.

In the days following the abduction, the police unsuccessfully continued their search for Monica. They viewed appellant as uncooperative and hostile. They testified that he became their prime suspect in the investigation.

For four years, however, there was no sign of Monica. During this time, Hilgeman made numerous trips to Mexico herself in search of her daughter. Finally, in January 1981, with the aid of private investigators and local authorities, Hilgeman located the little girl in the town of Capulhuac, Mexico. She was living in the home of Miguel and Maria Rios, whom she believed were her natural parents. Monica did not know the identity of her real parents. She had been told that appellant was her godfather.

On June 8, 1981, the district attorney for the County of Alameda filed an information accusing appellant of violating section 278.5 (concealment or detention of child in violation of a custody order). On June 9, 1981, appellant was arraigned on the charge and entered a plea of not guilty.

On September 18, 1981, the district attorney filed an amended information adding a second count for violation of section 236 (false imprisonment). On March 19, 1982, appellant was permitted to withdraw his plea of not guilty and he entered a plea of guilty to the violation of section 278.5 charged in count I. The district attorney's motion to dismiss count II was taken under submission. On June 30, 1982, the plea of guilty as to count I was set aside and appellant again entered a plea of not guilty to that offense.

Trial ran from October 21 to November 24, 1982. At trial, appellant admitted abducting Monica, but, in defense, claimed that it was necessary to do so for the child's welfare. He argued that Monica's physical well-being had been seriously neglected by Hilgeman; that the child was not bathed or dressed properly and was always hungry. He asserted at trial that he had expressed his concerns over Monica's health to Hilgeman, but that this was greeted with hostility and intransigence on her part. He also claimed that he did not know that in abducting Monica he was committing a crime and thus did not have the requisite mental state for conviction on count I.

On November 24, 1982, the jury returned verdicts finding appellant guilty as charged on both counts. At sentencing, the trial court imposed the aggravated term of three years in state prison as to the conviction in count II

(§§ 236, 237) and ordered stayed the imposition of sentence as to count I (§ 278.5). This appeal followed.

## II

In its amended information, the prosecution charged appellant with felony false imprisonment. Section 236 defines false imprisonment as "the unlawful violation of the personal liberty of another." Section 237 defines felony false imprisonment as that which is "effected by violence, menace, fraud, or deceit."

 Appellant challenged this part of the information below both on a demurrer and on a motion for judgment of acquittal (§ 1118.1). Appellant argued that the crime of felony false imprisonment was not established by the evidence because there was no evidence of force, menace, fraud or deceit committed against Monica Rios, the victim of the alleged crime. Evidence of fraud and deceit against the police or Hilgeman, Monica's mother, he argued, was not sufficient for purposes of sections 236 and 237. Appellant's demurrer and motion were denied.

On appeal, appellant asserts that although the evidence is sufficient to sustain a misdemeanor conviction, it is insufficient to sustain a felony conviction. Appellant declares that he does not challenge the fact that Monica was falsely imprisoned. He argues only that the evidence does not sustain the greater crime.

We do not agree with appellant's position that the evidence is insufficient to support the conviction of felony false imprisonment.

This appears to be an issue of first impression for this court. Stated simply, the issue is this: for the purpose of a felony false imprisonment conviction under sections 236 and 237, when the victim is a child of tender years, is it sufficient if the crime is "effected" by "violence, menace, fraud, or deceit" directed to the custodial parent rather than to the child herself. We hold that it is.

First of all, nowhere in section 236 or 237 does it state that the "violence, menace, fraud, or deceit" must be committed against the victim herself. The statutes merely state in general terms that the crime of felony false imprisonment must be "effected" by one of those elements. Appellant's interpretation of that provision would have the effect of narrowing its applicability in a way the language itself does not warrant. As a rule, "[i]n construing the statutory provisions a court is not authorized to insert qualifying provisions not included and may not rewrite the statute to con-

form to an assumed intention which does not appear from its language. The court is limited to the intention expressed." (*People* v. *One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677].)

■ Next, our interpretation of the statute is more in keeping with the policy of the law in these kinds of cases. In *People* v. *Oliver* (1961) 55 Cal.2d 761 [12 Cal.Rptr. 865, 361 P.2d 593], our Supreme Court indicated that in kidnapping cases the requirement of force may be relaxed where the victim is a minor who is "too young to give his legal consent to being taken" and the kidnapping was done for an improper purpose. (*Id.,* at pp. 764-766; see also *Parnell* v. *Superior Court* (1981) 119 Cal.App.3d 392, 402-403 [173 Cal.Rptr. 906], fn. 3.) And in *People* v. *Campos* (1982) 131 Cal.App.3d 894 [182 Cal.Rptr. 698], a case involving the abduction of an 11-month old child, the court upheld the propriety of dual charges against defendant for both child stealing (§ 278) and kidnapping (§ 207). The court said, "Child stealing has always been considered in California to be a crime against the parent, not the child. It is designed to protect parents against the anxiety and grief which necessarily follow from the taking of their children. [Citations.] But it belies common sense to suggest . . . that in forcibly stealing a baby from its mother, taking the baby to a foreign country and abandoning it there, appellant did not also commit a crime against the child, the crime of simple kidnapping. . . . That [defendant] found herself facing two charges instead of one is due to permissible prosecutorial discretion, because the circumstances in this case are particularly aggravated." (*Id.,* at p. 899.)

In the instant case, appellant was convicted of child stealing and false imprisonment. The circumstances in this case are particularly aggravated as well: appellant admittedly lied to the police, lied to Monica's mother, then continued the deception for a period of four years. Under these circumstances, it is manifest that appellant committed a crime against the child and that the crime was "effected" through fraud and deceit.

Nor should the fact that appellant was the father of Monica and not a mere stranger alter this conclusion. As the court said in *People* v. *Irwin* (1984) 155 Cal.App.3d 891, 900 [202 Cal.Rptr. 475], "[T]here is no historical understanding that parents without custody are exempted from the scope of [the] language [of section 278]. Though parental misbehavior may entail a likelihood of less distress to the victimized custodian, this is not inevitably the case. Nor can we say such 'lesser' distress inherently demands a separate penal response."[3]

---

[3]The Supreme Court has denied a hearing in the *Irwin* case.

Finally, we note that even under appellant's interpretation of the felony imprisonment statutes, there is more than ample evidence to support his conviction. Evidence adduced at trial indicated that the crime of false imprisonment in the instant case was "effected" through deceit of young Monica as well as her mother. As noted before, during the four years of concealment in Mexico, Monica was led to believe that Miguel and Maria Rios, with whom she resided, were her natural parents and appellant was her godfather.

### III*

. . . . . . . . . . . . . . . . . . . . . . . .

### VII

Judgment is affirmed.

Barry-Deal, J., concurred.

**WHITE, P. J.**—Respectfully I dissent specifically to the view expressed in the lead opinion holding and reasoning that when the victim is a child of tender years (13 months), the crime false imprisonment is punishable as a felony pursuant to California Penal Code sections 236 and 237[1] even if appellant's acts shown to be fraud and deceit[2] were directed solely to the will of the custodial parent (Georgia Rios Hilgeman) rather than the will of the victimized child. My colleagues assert that the issue is one of first impression in this court. However, upon review of treatises and case precedents defining and adjudicating the law of false imprisonment, no rationale is to be found even suggesting that the essential elements of false imprisonment will accommodate the majority's view. I think my learned colleagues tread on ground reserved for the Legislature. It is my humble view that the majority legislates law under the guise of interpreting statutory law.

Indisputably, the Legislature, when enacting section 236 defining false imprisonment as being ". . . the unlawful violation of the personal liberty of another," had in mind the crime false imprisonment as it existed at common law. At common law false imprisonment was a *misdemeanor* whether accomplished by physical application of force or the mere threat of

---

*Part III is not certified for publication. (See fn., *ante,* at p. 445.)

[1]Hereinafter all statutory references are to the Penal Code unless otherwise designated.

[2]The case was presented to the jury per arguments and the court's instructions on the theory of "fraud" or "deceit," there being no issue as regards "violence or menace."

force, i.e., whether effected by violence or menace. When considering the confines or scope of false imprisonment, it is helpful to keep uppermost in mind that as a tort its origin is the action of trespass with its requirement of direct and immediate interference with person or property. Consequently, words uttered in circumstances so as to constitute fraud or deceit are sufficient to prove false imprisonment if, as intended, they restrain a person's freedom of movement against his or her will.

Perkins[3] observes that although common law false imprisonment is a statutory offense in *many* states today, in others, for example the State of Iowa, it is omitted. The theory of omitting false imprisonment from criminal prosecution is that if the actor's acts are not covered by other crimes against the person, civil damages will adequately compensate the person whose liberty was momentarily infringed.

In California, false imprisonment is a civil tort as well as a crime. Both the crime and the tort false imprisonment are defined in one code, i.e., section 236. (*Parrott* v. *Bank of America* (1950) 97 Cal.App.2d 14, 22 [217 P.2d 89, 35 A.L.R.2d 263]; *Stallings* v. *Foster* (1953) 119 Cal.App.2d 614, 619 [259 P.2d 1006]; see 4 Witkin, Summary of Cal. Law (8th ed. 1974) p. 2498.) Witkin instructs that "[t]he tort requires direct restraint of the person for some appreciable length of time, however short, compelling him to stay or go somewhere against his will." (Witkin, *supra,* at p. 2498, italics omitted.) Prosser[4] is wholeheartedly in accord, "[I]t is essential, however, that the restraint be against the plaintiff's will. . . ." Perkins expresses the "will" requirement in terms of "wishes." False imprisonment ". . . results from any unlawful exercise or show of force by which a person is compelled to remain where he does not wish to remain or go where he does not wish to go." (Perkins, *supra,* at p. 171.)

Case precedents are in accord. "Any exercise of force or express or implied threat of force by which in fact *the person is restrained from his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is such imprisonment.* The imprisonment may be committed by acts or words merely *operating on the will of the individual* and/or by personal violence. The acts must be done, the words must be said, with the intent of causing the confinement. (*People* v. *Agnew,* 16 Cal.2d 655, 659, 660 [107 P.2d 601]; *People* v. *Zilbauer,* 44 Cal.2d 43, 51 [279 P.2d 534].)" (See *People* v. *Haney* (1977) 75 Cal.App.3d 308, 313 [142 Cal.Rptr. 186], italics added.)

---

[3]Perkins on Criminal Law (2d ed. 1969) page 175.
[4]Prosser, Law of Torts (4th ed. 1971) page 44.

The intent of the Legislature when enacting section 236 is clear. Having in mind the common law misdemeanor crime false imprisonment, the Legislature, acting out of concern for the public's best interest, opted against the course taken by Iowa. Instead it codified common law false imprisonment, perforce retaining its essential requirement of restraint against the victim's will. Manifestly, the Legislature, when enacting section 237, addressed the question of punishment in accord with the maxim "fixing punishment so as to reflect the facts and seriousness of the crime." Consequently, specified acts of the defendant, i.e., "violence, menace, fraud or deceit," resulting in false imprisonment that were at common law punishable as a misdemeanor are made punishable in our state as a felony. In sum, I find the Legislature's use of the word "such" significant. The drafters could have used the word "same," i.e., the same false imprisonment (§ 236, common law false imprisonment) if resulting from violence, menace, etc.

In my view, section 237 is not vaguely drafted in "general terms." (See majority opn. at p. 450.) This court's *interpretation* of section 237, which results in the creation of a new species of false imprisonment wherein the common law requirement of restraint against the will of the restrained victim is replaced with the will of another not alleged to be a victim is neither required nor justified.

*People* v. *One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677] (see majority opn. at pp. 450-451) is inapposite.[4] Appellant's contention that under section 237 his fraud and deceit must be shown to have affected Monica's will before his acts are punishable as a felony is not an unwarranted narrow interpretation of the statute. Certainly, appellant's contention does not in any sense rewrite section 237 to conform to an assumed legislative intent not expressed in the statute's language. (*Id.,* majority opn., at pp. 450-451.) Indeed, appellant's contention conforms to and accurately expresses the Legislature's intention. It is this court's majority that reads into section 237 a legislative intent never expressed, and I think

---

[4]In *People* v. *One 1940 Ford V-8 Coupe, supra,* 36 Cal.2d 471, the Supreme Court held that a trial court could not read an exception into a requirement expressed in section 11620 of the Health and Safety Code, a vehicle forfeiture statute, since repealed, requiring a lien claimant, i.e., a bank, to prove that its interest was created after a reasonable investigation of the vehicle purchaser's moral character, etc. The court found that the bank had not made the required investigation but, at the time, the purchaser's character and reputation were good. The trial court denied forfeiture and enforced the bank's lien applying the maxim that the law neither does nor requires an idle act. (Civ. Code, § 3532.) The Supreme Court reversed holding, as relied upon by my colleagues (see *id.,* at p. 475), that a court is not to insert qualifying provisions not included and may not rewrite a statute to conform to an intention assumed but not expressed. In sum, the expressed intention of a statute may not be defeated by a court's application of a maxim.

never contemplated. My colleagues' view, if it persists, makes room for a persuasive argument that section 237 is facially unconstitutional, i.e., void for vagueness.[5]

My sense is that my colleagues have determined section 237 is at best ambiguous, giving leave for court interpretation. Obviously, I am beyond persuasion that such is the case. However, assuming arguendo that the statute bears interpretation, how then does the lead opinion ignore the established principle that ambiguities in penal statutes must be construed in favor of the offender, not the prosecution? (See *In re Jeanice D.* (1980) 28 Cal.3d 210, 217 [168 Cal.Rptr. 455, 617 P.2d 1087]; *People* v. *Irwin* (1984) 155 Cal.App.3d 891, 897 [202 Cal.Rptr. 475].) The lead opinion makes no pretense at affording appellant the benefit to which he is entitled of every reasonable doubt as to the correct interpretation of the phrase "effected by . . . fraud or deceit."[6] In any case, I think appellant's contention is the only tenable construction of section 237.

I hold that appellant's false imprisonment of Monica is not punishable as a felony under section 237 simply because he lied and deceived Georgia Rios Hilgeman, the child's mother, in order to facilitate his commission of "felony child abduction." (§ 278.5; see also § 278.) Child abduction or stealing is appellant's felonious crime victimizing Monica's mother. In addition, he is revealed on this record as being all but proven guilty of felony-simple kidnapping. (§ 207, subd. (a).) Why appellant was not charged with simple kidnapping is a fact locked in the inviolate recesses of prosecutorial discretion.

My colleagues reason that the result they reach is "more in keeping with the policy of the law in these kinds of cases." (See majority opn. at p. 451.)

---

[5]Judicial restraint requires, I think, that we presume section 237 constitutional and avoid an unconstitutional result, even if said to be only arguable. I think the majority fails to heed a settled principle in California law, to wit: " 'When statutory language is thus clear and unambiguous there is no need for construction and courts should not indulge in it.' " (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].)

[6]*Carlos* v. *Superior Court* (1985) 35 Cal.3d 131, at page 145 [197 Cal.Rptr. 79, 672 P.2d 862], adhered to the "rule" stating: "In *ex parte Rosenheim* (1890) 83 Cal. 388, 391 [23 P. 372], the court explained that '[w]hile it is true, the rule of the common law that penal statutes are to be strictly construed has been abrogated by the code, which provides that "all its provisions are to be construed according to the fair import of their terms, with a view to effect its object and promote justice," it is also true that the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute. . . .' The California courts thereafter have adhered to the rule that a reasonable doubt concerning the meaning of a penal statute should be resolved in favor of the defendant. Thus, in *Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420], we declared that '[i]t is the policy of this state to construe a penal statute as favorably to the defendant as its language and the circumstances of its application may reasonably permit. . . .' " (Italics added.)

But legislators periodically elected by the populous are better equipped to make public policy. In light of sections 278, 278.5 and 207, our Legislature has enacted a strong public policy covering *these kinds of cases.* Of course, this court exists to objectively enforce that policy. Our duty notwithstanding, I am unaware of any judicial tenet authorizing this court in this instance to hold appellant punishable as a felon solely because in the commission of misdemeanor false imprisonment he precipitated particularly aggravated circumstances, i.e., when he "lied to the police, lied to Monica's mother, then continued the deception for a period of four years." (See majority opn. at p. 451.) Appellant concedes that he is guilty of misdemeanor false imprisonment.[7] There is no rule or principle requiring that because the crime was egregious and victimized a child of tender years, appellant's offense must be elevated to a felony. If the state desired an additional felony conviction, it should have prosecuted the greater section 207 offense and not the lesser and necessarily included section 236 offense. (See *People* v. *Apo* (1972) 25 Cal.App.3d 790, 796 [102 Cal.Rptr. 242].) Respondent's argument that adhering to the common law essential that the fraud or deceit be directed to the will of the victim eliminates the viability of felony false imprisonment when the alleged victim is a child of tender years is spurious and as such should be rejected.

### FRAUD AND DECEIT DIRECTED TOWARD THE CHILD

Respondent's brief asserts "[o]n the other hand, even if it be assumed (*arguendo*) that section 237 requires that the element of 'fraud' or 'deceit'

---

[7]Appellant's concession implicitly recognizes that his acts did affect Monica's will, albeit not by virtue of his fraud and deceit directed to Hilgeman and the police, but by operation of law. Usually, cases of false imprisonment involve alleged acts of restraint or confinement by adults, i.e., the police, storekeepers, repossessors of property, etc., against the will or wishes of persons capable of awareness and of giving consent. Although the reported cases are relatively few in number, persons in fact or at law who are incapable of giving free and intelligent consent because of unsound mind or tender years of age can nevertheless be falsely imprisoned. Prosser, *supra,* at page 43, reports three American decisions wherein there was false imprisonment in cases of children and an idiot without consciousness of it. (Accord, Perkins, *supra,* at pp. 173, 176.) Prosser, *supra,* at pages 46-47, concludes that "[i]t seems reasonable to say that whenever a legal duty to release another from confinement can be made out an intentional refusal to do so is sufficient for false imprisonment." Herein, appellant had a duty to release Monica to Hilgeman at 2 p.m. on Sunday, October 17, 1976; upon intentionally failing in that duty, his crime of false imprisonment was complete. Monica's will, because of her tender years, was affected by operation of law. Appellant told no lies or misrepresentations to Monica impacting her will as such. Consequently his crime is misdemeanor false imprisonment.

Notably, the Restatement of Torts 2d, section 42, requires that Monica either know of her confinement or be harmed by it. This view is challenged by Perkins (see *supra,* at p. 176) as being unsound at criminal law wherein the purpose is to punish the actor and not to compensate the victim. In any case, I would think that Monica suffered harm when deprived of her natural right to receive the nurturing, love, affection, training and example of her natural mother during her formative years.

be perpetrated against the person of the victim, even if a child, substantial evidence of such fraud and deceit by appellant and against the child, Monica, was presented at trial."[8] The lead opinion, at page 452, concurs without reservation and, based thereon, alternatively affirms appellant's felony punishment for false imprisonment pursuant to section 237.

Appellant appropriately directs our attention to *People* v. *Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468], in both his opening brief (*id.*, at p. 68) and in his closing brief. (*Id.*, at pp. 67-69.) "Appropriately" because respondent's asserted alternate theory sustaining appellant's section 237 punishment strongly suggests probable implication of a settled governing rule on appeal. When the prosecution presents its case to the jury on alternate theories, one legally correct and one legally incorrect, and the reviewing court cannot determine from the record on which theory the jury reached its general verdict of guilt, the conviction cannot stand. (*Id.*, at p. 69.) The same rule applies when the defect in either alternate theory is not legal but factual, i.e., when the evidence is held to be insufficient to support the conviction on that ground. (*Id.*, at p. 70.)

*Green, supra,* at pages 67, 68, allows this court to determine the theory on which the case was tried and, to that end, permits review of the district attorney's closing arguments. Upon review of the prosecution's closing argument in the case at bench, the conclusion is inescapable that the deputy district attorney advanced two theories: one, I think, legally incorrect; one arguably legally correct unless vitiated, of course, by the rule in *People* v. *Buffum* (1953) 40 Cal.2d 709 [256 P.2d 317]; see also *People* v. *Bormann* (1970) 6 Cal.App.3d 292, 297 [85 Cal.Rptr. 638].

Consequently, I, for one member of this panel, am unable to determine whether the jury decided upon felony punishment under section 237 based on what I contend is a *legally incorrect* theory that evidence of appellant's

---

[8]The evidence is meager but arguably reasonable inferences constitutionally sound (*People* v. *Castro* (1985) 38 Cal.3d 301, 313 [211 Cal.Rptr. 719, 696 P.2d 111]) make the evidence "substantial" and of "solid" value. Hilgeman, Monica's mother, testified over objection that she had the presence of mind to have in her possession a photograph depicting her and appellant when recovering physical custody of Monica. In an effort to calm Monica, and to establish that she was not an imposter, Hilgeman showed the picture to Monica. Hilgeman testified that Monica identified appellant by stating, "that is Juan Rios, my godfather." The evidence is unanimous that Monica is a "bright" child.

Under cross-examination appellant testified that "yes" he believed that Monica thought that Maria and Miguel (Rios), by whom she was raised in Mexico, were her real parents; that Monica called him "Padrino" which is "Godfather," or "Juan" most of the time and "Papa" less frequently. A reasonable inference then, is that appellant, intending to so do, restrained Monica's freedom of movement while keeping her in Mexico directly against Monica's will and by fraud and deceit directed to her. Understandably, no effort was made to prove Monica's awareness or consciousness of her confinement to Mexico. In any case Monica's will was affected by operation of law, (see fn. 7), if not in fact.

fraud and deceit was perpetrated upon Georgia Rios Hilgeman, the police authorities, and others; or solely based on evidence that while rearing Monica in Mexico appellant's felonious conduct occurred when causing her to believe that her mother and father were Miguel and Maria Rios and that appellant was her godfather.

As regards the theory that I contend is legally incorrect, the prosecution argued:

"Fraud includes all surprise, trick, cunning and unfair ways by which one person deceives or attempts to deceive another.

"Now, isn't that basically what we have here?

"We have a promise to return Monica at 2:00 p.m. on Sunday. That wasn't kept because, obviously, the Defendant intended to steal Monica and take her to Mexico.

"We have lies to the police department. We have all other factors that you can look upon as an unfair way by which one person deceives or attempts to deceive another.

"The Defendant planned this whole episode. He executed it. Georgia was a helpless victim as she left the house on that Saturday morning, October 16, 1976, and delivered Monica to the Defendant in a dress, put her in the car seat, and that is the last she saw of her for four years and three months.

"He basically set Georgia up, and the ax fell, and Monica was gone. By definition, that is certainly deceit."

The prosecution also theorized that the false imprisonment was "continuous" in nature. The court's instructions to the jury to set forth the prosecution's apparently bottom line theory of the evidence, i.e., that appellant's false imprisonment of Monica was continuous, stated: "The application of the charge of false imprisonment in this case, if at all found applies only to the child as the victim. [¶] Any intentional and unlawful restraint, confinement, or detention of Monica Rios by fraud or deceit for any period of time between October 16, 1976 and January 11, 1981, constitutes felony false

imprisonment in violation of Section 236."[9] However, the prosecutor's argument urged the jury to consider the "alternate" theory, arguing that they may not agree on the "taking," but that one of three separate crimes occurred in Mexico. The prosecutor argued:

"Now, at this point, I should point out to you that also within Section 236 there are three separate crimes.

"You may find that *the Defendant intentionally and unlawfully restrained Monica in Mexico and the Defendant intentionall[y] and unlawfully confined her in Mexico, and, finally, the Defendant intentionally and unlawfully detained her there.*

"Again, this particular statute has three separate crimes in it, and so when you are analyzing it, *you may not agree on the taking, but at some point there certainly is concealment,* and so you have between the two particular sections six separate crimes to work with and in analyzing the facts of this case, and, as the People submit, to find the Defendant guilty of both counts." (Italics added.) Then the prosecution's bottom line resurfaced:

"The act was accomplished by fraud or deceit. Again, the consent of Monica in this case is immaterial. She is too young to know what is happening, and, therefore, the law presumes it was against her will.

"Finally, if you find any one of those acts, that the Defendant restrained, . . . confined . . . or detained Monica by fraud or deceit, and any of these acts occurred between October 16, 1976 to January 11, 1981, the Defendant is guilty of Section 236 of the Penal Code. It is an unlawful detention, no matter how short the period of time is.

"As it states in this instruction, any intentional and unlawful restraint, confinement or detention of Monica Rios by fraud or deceit for any period of time between October 16, 1976 and January 11, 1981, constitutes felony false imprisonment, in violation of Section 236."

---

[9]Laboring, so to speak, under the prosecution's theory that appellant's acts consisted of a continuous course of conduct, the court apparently concluded that it was under no *sua sponte* duty to instruct in language of CALJIC No. 17.01 in re unanimous agreement on one of a number of unlawful acts. However, when the prosecution at trial (and now on appeal) offered theories urging the jury that appellant's acts at the time of the "taking" in Oakland are distinct and separate from his acts of concealment while in Mexico, either or both sufficient upon which to base a verdict of guilt, perforce instructions embodying CALJIC No. 17.01 should have been included in the court's charge to the jury. (See *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 [140 Cal.Rptr. 299]; but for a definitive review of cases see Justice Hopper's opinion in *People* v. *Madden* (1981) 116 Cal.App.3d 212, 216-219 [171 Cal.Rptr. 897], hg. den. by Sup. Ct. on April 29, 1981.) I hold that *Madden* error occurred herein requiring reversal with respect to the section 237 judgment.

In sum, the prosecution argued "[t]he fraud or deceit is an overall thing, . . ." If the jury, consistent with the court's instructions of law, predicated appellant's guilt of the alleged felony false imprisonment upon evidence of his lies to Monica's mother, the police, or others, their verdict is contrary to the law. Such evidence is legally insufficient to base a finding of "fraud" or "deceit" within the purview of section 237. On the other hand, if the jury predicated appellant's guilt and felony punishment solely on appellant's actions delimited to Monica during her restraint, confinement or concealment while in Mexico, the judgment runs afoul the rule in *Buffum/Bormann*. "It is a 'general principle, that, ordinarily, a state does not impose punishment for acts done outside its territory.' (*People* v. *Buffum* (1953) 40 Cal.2d 709 [256 P.2d 317].)" (See *People* v. *Bormann, supra,* at p. 297.) Assuming arguendo that the evidence is sufficient to show that appellant "effected" Monica's concealment in Mexico by fraud or deceit, California's laws, I think, would not thereby be violated. (See *Bormann, supra,* at p. 298.)

In any case, returning to *People* v. *Green, supra,* it is impossible on this record to determine which of two theories, one theory indubitably incorrect at law, the jury based its verdict finding appellant guilty of sections 236 and 237. I would reverse the judgment. This case, if anything, was overtried leaving no room to suspect that a retrial would adduce additional evidence. Accordingly, I would enter a verdict of misdemeanor false imprisonment. On remand, the court in the proper exercise of discretion is able to punish appellant as a felon, if so disposed, pursuant to the stayed section 278.5 judgment.

Appellant's petition for review by the Supreme Court was denied May 21, 1986.