Filed 6/24/24  P. v. Snow CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D081968 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE414069) |
| AARON JOSEPH SNOW, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, John M. Thompson, Judge.  Affirmed.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Aaron Snow of felony false imprisonment by violence or menace (Pen. Code, §§ 236, 237, subd. (a))[1] and misdemeanor battery (§ 242) after an incident on the trolley in San Diego. Snow witnessed an autistic teenager, William M., board the trolley with his mother (Y.M.) and sister (P.M.). At William's request, his hands were tied loosely behind his back with a t-shirt because it made him feel more secure. Snow believed the child was in danger and needed to be rescued. He punched William's mother and grabbed William, forcibly separating him from his mother for approximately 10 minutes. Snow did not release William even after his mother and sister identified themselves as such. Police eventually arrived and arrested Snow.

Snow contends that the judgment in this case must be reversed because the evidence was insufficient to support his conviction for false imprisonment. According to Snow, where the victim is a minor or otherwise lacks the capacity to consent to the charged conduct, a false imprisonment conviction requires proof that the defendant had an illegal purpose or illegal intent. Snow argues that the People failed to present any evidence to establish this illegal purpose or intent element, and his conviction must therefore be overturned. The People respond that there is no such requirement under the law, and that even if there were, the victim here did not lack the capacity to consent.

We conclude that sufficient evidence was presented from which the jury could have concluded that William was capable of giving consent. Thus, even assuming the crime of felony false imprisonment requires an illegal purpose or intent where the victim is incapable of consenting, there was substantial evidence to establish that this additional element did not apply on the facts of

---

[1]     Undesignated statutory references are to the Penal Code.

this case. We further conclude that there was sufficient evidence of the other applicable elements of felony false imprisonment, and we therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Prosecution's Case*

Y.M. has three children, including daughter P.M. and son William, who at the time of trial were 20 years old and 13 years old, respectively. William has medical issues and special needs, including severe autism. He is mostly nonverbal and sometimes engages in self-harm, including punching himself. William can communicate with his family, though, and ask for things he wants by making gestures.

When Y.M. takes William in public, she needs to do a lot to prepare him in advance. For example, Y.M. only takes William to the grocery store in the early morning or in the evening just before closing, because the noise and lighting will startle and rattle him. Sometimes, when William is feeling uncomfortable in public, he communicates that he would like his hands to be bound so he feels more secure. His mother spoke about this request with William's pediatrician, and they discussed using William's old t-shirts to wrap his hands. Once his hands are tied, William "is instantly happy." The t-shirt is "not wrapped tight at all"—"[i]t's just there because that's what he's asked for, and he's just fine." Y.M. has had people ask her about William, and she is "happy to answer any questions they have because everybody is not used to an autistic child." She always tells anyone who asks her questions, "if you have a problem with what you see or what I'm doing, I invite you to call the cops. My son is registered with the police department[.]"

On the day of the incident, Y.M. was with her daughter and son on the trolley. Before they boarded the trolley, William requested that his mother

3

put his t-shirt around his hands, so she did.  She explained what happened next while narrating the security video footage taken from the trolley that was played for the jury.

After boarding the trolley, Y.M. noticed Snow staring at her and her children.  Snow then walked over to Y.M. and punched her in the face.  He took William out of her hands "very forcefully," in a "violent" manner that made William's sister P.M. fear for his safety as well as her own.  After Snow grabbed William and pulled him away from his family, Snow put his backpack on top of William, and then he sat on him to keep him in the seat.

Y.M. and P.M. pressed the call box button to tell the conductor there was an emergency.  Y.M. "let the conductor know that [she] had been attacked on the train" and asked the conductor to call the police.  At first, Y.M. attempted to get her son back, but she realized she had already been punched and did not want to make a bad situation worse, so she needed to get help.

P.M. was very nervous, scared, and shook up throughout the incident, and she was worried about her brother.  She tried to get her brother back, but Snow pushed her and stood in the way to prevent her from reaching William.  P.M. then stood in front of the door to keep Snow from taking her brother off the trolley until they could get help.

At a certain point, Snow tried to get off the trolley.  After two men questioned why he was running if he had just been trying to help, Snow got back on the trolley.  It was during this time that Y.M. was able to get William back.  Y.M. said she thought "a good 10 to 15 minutes" elapsed between when Snow took William and when she got him back.

William appeared to be in shock during the incident, and he was not able to get up and go back to his family.  Y.M. was also in shock and felt

4

helpless during the incident. She is a cancer patient and did not have her normal body strength at the time, so she knew she could not overpower Snow to get her son back. She knew, however, that she would not let Snow get off the trolley with William even if she had to give her life.

Since the incident, William has not been sleeping or eating much. He is "really jittery" and has been scratching his family, which he used to do when he was younger when he got upset. William has always loved the train, but now sometimes he "gets really freaked out" near trolley stations or on the trolley.

B. *The Defense Case*

Snow testified on his own behalf. He saw that William was tied up and thought he could have been a missing child who was being trafficked and possibly taken to the Mexican border. Snow did not think it was normal or acceptable to tie up a child, so he felt he needed to act. He further believed that to ignore a crime taking place is itself a crime. Snow's intent was to protect William because he perceived William was being abused. He thought he had to act quickly because there was a risk that William might disappear.

Snow acted the way he did to separate and untie William in the hopes that he could then "restrain that child enough to control the situation in order that the police would then arrive." He felt what he did was necessary to keep William safe and believed he had the right to make a citizen's arrest. Snow did not sit on William but rather squatted over him without putting any weight on him or making physical contact. Snow placed his backpack on William because he wanted him to hold it to distract him. He tried to be very careful with William because he appeared malnourished and frail.

Snow got off the trolley momentarily because he was afraid of being arrested, but he returned because he realized it was his responsibility to see this through and that he should not leave his post.

Snow acknowledged that he punched Y.M. but said he did not repeatedly attack her. He was not trying to injure her but instead used a "quick stun maneuver" to disorient her to get William and "maintain the safety of the child." He then told others on the trolley to call the police. Snow admitted he did not let William go even after his mother and sister identified themselves as such.

C. *Relevant Jury Instructions and Verdict*

The trial court instructed the jury on felony false imprisonment using CALCRIM No. 1240, which provides as follows: "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant intentionally and unlawfully restrained, confined, or detained someone by violence or menace; [¶] AND [¶] 2. The defendant made the other person stay or go somewhere against that person's will. [¶] *Violence* means using physical force that is greater than the force reasonably necessary to restrain someone. [¶] *Menace* means a verbal or physical threat of harm. The threat of harm may be express or implied. [¶] An act is done *against a person's will* if that person does not consent to the act. In order to *consent*, a person must act freely and voluntarily and know the nature of the act. [¶] False imprisonment does not require that the person restrained be confined in jail or prison."

After deliberating, the jurors found Snow guilty of felony false imprisonment and misdemeanor battery. They found him not guilty of felony child abuse and not guilty of making a criminal threat. The court sentenced Snow to two years in state prison.

Snow appeals only the felony false imprisonment conviction.

DISCUSSION

*Standard of Review*

Our review of a claim of insufficiency of the evidence is limited. We review the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which any rational trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Whitmore* (2022) 80 Cal.App.5th 116, 129 (*Whitmore*).) Given this court's limited role on appeal, Snow " 'bears an enormous burden in claiming there was insufficient evidence to sustain his conviction . . . . If the verdict is supported by substantial evidence, we are bound to give due deference to the trier of fact and not retry the case ourselves.' " (*Id*. at p. 130.)

*Analysis*

False imprisonment is the unlawful violation of the personal liberty of another, and it is a felony when effected by violence, menace, fraud, or deceit. (*Whitmore, supra*, 80 Cal.App.5th at p. 130; §§ 236, 237.) "Violence" in this context means the use of physical force beyond what is reasonably necessary to restrain the person. (*People v. Matian* (1995) 35 Cal.App.4th 480, 484.) The additional force required to elevate misdemeanor false imprisonment to a felony may come in the form " 'of simply pulling a victim toward a location when the victim's liberty has already been violated.' " (*Whitmore*, at p. 130.) "Menace" means the threat of harm, whether express or implied, through

7

words or acts. (*Ibid*.) As the jury was instructed here, the act must be done against a person's will, meaning that the person did not consent to it. (CALCRIM No. 1240; see also *People v. Rios* (1986) 177 Cal.App.3d 445, 453 (*Rios*).)

Snow concedes there was sufficient evidence of each element of false imprisonment by violence or menace with the exception of consent. According to Snow, there was insufficient evidence to support his false imprisonment conviction because the People failed to demonstrate that he had an illegal intent or purpose, which is a required additional element where the victim lacks the capacity to consent.[2] Snow's argument assumes that the victim here, William, was unable to consent to Snow's conduct.

The People argue that Snow's argument fails for three reasons: (1) William did not lack the capacity to consent; (2) even if he did, the People were not required to show that Snow had an illegal purpose or intent, because that is not an element of false imprisonment of a victim unable to consent; and (3) in any event, substantial evidence established that Snow did act with an illegal purpose or intent. Because we conclude that there was

___

[2]    Notably, Snow only raises a sufficiency of evidence claim. He does not contend that the jury instructions erroneously omitted this alleged element of false imprisonment. In civil cases, "[w]e review the sufficiency of evidence to support a verdict under the law stated in the instructions given, rather than under some other law on which the jury was not instructed." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 674–675, citing *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1535.) We do not apply this rule here, however, and we express no opinion whether it is applicable to criminal cases. We instead analyze the sufficiency of evidence issue as if the jury had been instructed on the principle of law Snow invokes—that illegal intent or purpose is an element of false imprisonment when the victim lacks the capacity to consent.

sufficient evidence from which the jury could have determined William was capable of giving consent, we need not reach the People's other arguments.[3]

Snow relies on four cases to support his contention that the People were required to prove beyond a reasonable doubt that he had an illegal purpose or intent in falsely imprisoning a victim without the capacity to consent. But these cases do not compel the conclusion that *William* lacked the capacity to consent here. Each of the cases Snow cites involved a child under the age of three who was moved without physical violence under circumstances where they were seemingly unaware of what was happening to them. (See *People v. Hill* (2000) 23 Cal.4th 853, 856–861 [carjacking and kidnapping of a seven-month-old]; *People v. Oliver* (1961) 55 Cal.2d 761, 763 (*Oliver*) [kidnapping of a two-year-old]; *In re Michele D., supra*, 29 Cal.4th at pp. 603–605 [kidnapping of a 12-month-old]; *Rios, supra*, 177 Cal.App.3d at pp. 448–449 [false imprisonment of a 13-month-old].) William, by contrast, was 13 years old at the time of the incident and there is no evidence that he was unaware of what was happening.

Snow relies on *Oliver* to argue that the People were still required to show he had an illegal purpose or intent due to William's "diminished mental state." In *Oliver*, the Supreme Court held that, to avoid the possibility of an

---

[3]    With regard to the People's second argument, however, we note that at least one appellate court has concluded that where the victim of false imprisonment is an infant or small child, evidence of the defendant's illegal purpose or intent is required. (*People v. Dominguez* (2010) 180 Cal.App.4th 1351, 1358 (*Dominguez*) ["We assume the discussion of force in the context of a kidnapping prosecution in [*In re*] *Michele D.* [(2002) 29 Cal.4th 600] applies equally to the force requirement of false imprisonment. This assumption appears beyond reasonable dispute, as *Rios*, a false imprisonment case, was cited with approval in [*In re*] *Michele D. . . . .*"].)

unjust result in kidnapping cases involving an unresisting infant[4] incapable of giving consent, the kidnapping statute should be given a " 'sensible construction,' " and the element of force in kidnapping cases involving those who lack the ability to consent is thus established only " 'if the taking and carrying away is done for an illegal purpose or with an illegal intent.' " (*Dominguez, supra*, 180 Cal.App.4th at pp. 1357–1358, quoting *Oliver, supra*, 55 Cal.2d at p. 768.) The *Oliver* court stated that the rule applied to people incapable of giving consent "because of infancy *or mental condition*." (*Oliver*, at p. 766, italics added.) In a more recent case involving the rape and kidnapping of an intoxicated victim, the Supreme Court concluded that "[w]hile children *and mentally impaired adults* may not be similar in all respects, they are similarly vulnerable to kidnapping and equally unable to consent to being moved, so the relaxed force requirement applies to each." (*People v. Lewis* (2023) 14 Cal.5th 876, 895 (*Lewis*), italics added.) The *Lewis* court explained that the law protects a victim who may go willingly with the defendant because they are "unable to appreciate the defendant's illegal intent." (*Id.* at p. 896.)

But these legal principles do not help Snow. The key factor is not the fact of the victim's age or mental capacity itself, but whether the victim's age and/or mental capacity renders them "legally unable to consent." (*Lewis, supra*, 14 Cal.5th at p. 897.) Although William is autistic and generally nonverbal, his mother testified that he "talks just a little bit" and "communicates with [his family] well." She described William as "a

---

4       We acknowledge that courts' use of terminology to refer to victims in this context is imprecise; the terms "infant," "child," "small child," "child of tender years," "minor," and "youth" are rarely defined and often used interchangeably.

requester" who "makes gestures to get things he wants." Sometimes when William is uncomfortable, he asks for his hands to be bound, as he did the day of the incident. William also pushed Snow's backpack off of his lap and held his arms up, which the jury could reasonably find indicated he did not consent to Snow's acts. This evidence is sufficient to support a conclusion that William did not lack the capacity to consent.

As noted, Snow's sufficiency of evidence argument depends entirely on the factual assumption that Williams lacked the capacity to consent. Snow does not contest that if William had the capacity to consent, the People were not required to prove that he acted with an illegal purpose or intent. Because the evidence supports a finding that William had the capacity to consent, the factual predicate of Snow's sufficiency of evidence argument is absent. We need not decide whether there was sufficient evidence that Snow acted with an illegal purpose or intent because, on this record, this is not a required element of the crime when viewing the evidence in the light most favorable to the judgment.

The evidence was otherwise sufficient to establish all the traditional elements of felony false imprisonment. Snow forcibly grabbed William—first by the neck and arm, and then by wrapping his arms around William's body—to physically separate him from his mother. He then moved William several feet away, where he continued to physically restrain William by holding him back, with Snow's arms fully around William's body. Snow then untied William's hands, pushed him into a seat, and placed a backpack on top of him. William pushed the backpack off of his lap, and Snow then crouched over or sat on William to continue preventing his movement. This was substantial evidence that Snow intentionally restrained, confined, or detained William against his will by violence or menace. Accordingly, we

11

conclude that sufficient evidence supports the conviction for felony false imprisonment.

DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

HUFFMAN, Acting P. J.

KELETY, J.